10/8/2019 5:29 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37493421
By: Marcella Hill
Filed: 10/8/2019 5:29 PM

EXHIBIT "B"

CAUSE NO. _____

| | | |
|---|---|---|
| **DAVE AND ANGELA** | § | **IN THE DISTRICT COURT OF** |
| **SMOTHERMON** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **UNITED PROPERTY & CASUALTY** | § | |
| **INSURANCE COMPANY and JAMAL** | § | |
| **HOLMES** | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs, Dave and Angela Smothermon, file this Plaintiffs' Original Petition against Defendants, United Property & Casualty Insurance Company and Jamal Holmes, and for cause of action, would respectfully show:

### I. DISCOVERY CONTROL PLAN

1.        Plaintiffs intend for discovery to be conducted under Level 3 of Rule 190 of the TEXAS RULES OF CIVIL PROCEDURE. This case involves a first-party homeowners' insurance claim arising out of Plaintiffs' covered property damages caused by Hurricane Harvey. This dispute involves complex legal issues originating from the TEXAS INSURANCE CODE, common law, and recent Texas case law. It will require extensive and detailed discovery regarding claims-handling practices, coverage decisions, adjustment/payment of claims, including Plaintiffs' claim, as well as the systematic approach by United Property & Casualty Insurance Company and its adjusters to the handling of catastrophic loss property damage claims arising from Hurricane Harvey. Plaintiffs therefore respectfully ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

Certified Document Number: 87519159 - Page 1 of 45

## II. PARTIES

2.      Plaintiffs, Dave and Angela Smothermon, are Texas residents who reside in Harris County, Texas.

3.      Defendant, United Property & Casualty Ins. Co. ("UPC"), is a Foreign insurance company authorized to engage in the business of insurance in the State of Texas.  UPC may be served with process via its registered agent, CT Corporation Systems, at 1999 Bryan St, Ste 900, Dallas, TX 75201

4.      Defendant, Jamal Holmes, is an individual licensed adjuster, who has done business in the State of Texas. Mr. Holmes may be served with process by personal service, at his principle place of business located at: 420 Pilot Rd. Las Vegas, NV 89119, or wherever else he may be found.

## III. JURISDICTION AND VENUE

5.       This Court has jurisdiction over this cause of action because the amount in controversy is within the jurisdictional limits of the Court. Pursuant to Rule 47 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiffs state to seek monetary relief in excess of $100,000.00 and less than $200,000.00. Plaintiffs reserve the right to amend their petition during and/or after the discovery process.

6.      This Court has personal jurisdiction over UPC because UPC is an insurance company authorized and engaged in the business of insurance in Texas and Plaintiffs' causes of action arise out of UPC's business activities in this State.

7.      This Court has personal jurisdiction over Jamal Holmes because Mr. Holmes, at all times relevant to this cause, was engaged in the business of adjusting insurance claims in the State of Texas and Plaintiffs' causes of action arise out of his business activities in this State.

Certified Document Number: 87519159 - Page 2 of 45

8.     Venue is proper in Harris County because the insured property is located in Harris County and all or a substantial part of the events giving rise to this lawsuit occurred in Harris County. TEX. CIV. PRAC. & REM. CODE § 15.032.

## IV.  FACTS

9.     Plaintiffs own the residential property at 2106 Orchard Country Lane. Houston, Harris County Texas (the "Property"). UPC sold, and Plaintiffs paid for, a Texas homeowners' insurance policy (Policy No. UTH032305601, the "Policy") to protect and insure Plaintiffs' Property.

10.    From August 25th through September 1, 2017, Hurricane Harvey swept across Texas coastal causing widespread destruction and devastation. During this time, Hurricane Harvey's massive wind field caused widespread destruction in and around Harris County, and to Plaintiffs' Property, specifically.

11.    Plaintiffs' Property suffered extensive wind and wind-related damage during Hurricane Harvey. Specifically, Harvey's winds caused extensive damage to the roof system, exterior envelope, and structural components of the Property. The severe and widespread damage to the building envelope created openings which allowed water to penetrate into the Property's interior, causing significant interior water damage to the ceilings, attic, walls, flooring and garage.

12.    Following Hurricane Harvey, Plaintiffs promptly and timely reported their claim (Claim No. 2017TX027017, the "Claim")  under the Policy and asked UPC to adjust the loss, properly estimate the cost of repairs required to return the Property to its pre-loss condition, and pay for all such covered loss and damage, pursuant to the terms of the Parties' contract.

13.    Plaintiffs are entitled to these benefits under the UPC Policy as it specifically covered Plaintiffs' home for wind and wind-caused loss or damage. All of the loss and damage to

Certified Document Number: 87519159 - Page 3 of 45

the Property, which is noted and described here in was covered under the express terms of the Policy.

14.     UPC, assigned Jamal Holmes to handle the Claim on its behalf.

15.     Jamal Holmes, however, because of inadequate training or improper instruction, failed to perform a reasonable or adequate investigation of Plaintiffs' Claim or adjustment of Plaintiffs' loss. In the course of his "investigation," Mr. Holmes either completely missed or simply ignored damages that were present at the time of his inspection and which were clearly attributable to Hurricane Harvey's powerful winds.

16.     The inadequacy of Mr. Holmes' investigation and adjustment of Plaintiffs' Claim is evidenced by the fact he neither adjusted for, nor included, the full scope of Plaintiffs' roof damage and neglected even to note, much less address, multiple rooms in the Property. Plaintiffs' roof sustained extensive wind damage over its entire surface, and evidence of this wind damage is readily apparent from even a casual view. The massive amount of roof damage allowed water to penetrate the Property's envelope in multiple locations and resulted directly in the substantial interior damage to Plaintiffs' home, which damage Mr. Holmes also failed to document properly or sufficiently.

17.     Although Plaintiffs notified, and later, reminded UPC numerous times of the significant widespread roof damage causing major leaks throughout the interior of the Property, Mr. Holmes failed to fully and adequately inspect the damaged areas of Plaintiffs' house, including the roof, interior of garage, among other items and areas. Mr. Holmes' failure to observe or document the full scope and extent of the wind damage to Plaintiffs' Property resulted in an improperly under-scoped and consequently undervalued estimate for repairs that was submitted to UPC (the "Estimate"), and which UPC affirmed and adopted as its own.

Certified Document Number: 87519159 - Page 4 of 45

18.     As an illustration—and certainly not intended as a complete listing of all the errors and omissions in Defendants' investigation and adjustment of Plaintiffs' Claim—the following are just some of the unfair and unreasonable low points of the Estimate:

- The Estimate wholly omitted, failed to include, and failed to account for the significant, covered, damages to the roof and the roof's framing system.

- The Estimate fails to include the damage sustained to the terrace roof, furnace vent, chimney, and other exterior components to the Property.

- The Estimate fails to accurately document the amount of damage done to the interior of the family room, hallway and garage of the Property.

19.     Plaintiffs contend that, upon information and belief, UPC, United Insurance Management, LC and Mr. Holmes set out and overtly sought to under-scope, underpay, and ultimately minimize Plaintiffs' Claim for covered damages. At minimum, UPC ratified Mr. Holmes' unreasonable and improper "estimation" of the Claim, resulting in Plaintiffs' Claim effectively being denied in part as well as undervalued and underpaid. Plaintiffs have suffered actual damages resulting from UPC's and Mr. Holmes' wrongful acts and omissions as set forth above and further described herein.

20.     In short, Plaintiffs have yet to receive the full amount of payment to which they are entitled under the Policy because the Claim was improperly investigated and unreasonably adjusted.

## V. CAUSES OF ACTION

### BREACH OF CONTRACT AGAINST UPC

21.     An insurance policy is a contract under Texas law. UPC failed to perform its contractual duties to adequately compensate Plaintiffs in accordance to the terms of the Policy that UPC both wrote and sold to Plaintiffs. Specifically, UPC refused to pay the full amount of benefits owed under the Policy, although due demand was made, and all conditions precedent to recovery under the Policy had been performed and accomplished by Plaintiffs or waived by UPC. UPC's conduct constitutes a breach of the insurance contract between UPC and Plaintiffs.

### NON-COMPLIANCE BY UPC WITH THE TEXAS INSURANCE CODE, UNFAIR SETTLEMENT PRACTICES

22.     UPC's conduct constitutes multiple violations of the TEXAS INSURANCE CODE, UNFAIR SETTLEMENT PRACTICES. TEX. INS. CODE §541.060(a). All violations under this provision are made actionable by TEX. INS. CODE §541.151.

23.     Falsehoods and misrepresentations under Texas law may be communicated by actions as well as spoken word; therefore, deceptive conduct is equivalent to a verbal representation UPC's misrepresentations by means of deceptive conduct include, but are not limited to: (1) failing to conduct a reasonable inspection and investigation of Plaintiffs' damages; (2) stating—by way of the estimate—the Plaintiffs' damages were less extensive or severe than they actually were, resulting in the undervaluing of Plaintiffs' damages; (3) using Mr. Holmes' statements and representations about the scope and extent of the covered damage as a pretext for effectively denying covered damages and/or underpaying damages; and (4) failing to provide an adequate explanation for the inadequacy of any payment(s) Plaintiffs in fact received.

24.     UPC's unfair settlement practice, as described above, of misrepresenting—by words and acts/omissions—to Plaintiffs' material facts relating to the coverages at issue,

Certified Document Number: 87519159 - Page 6 of 45

constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(1).

25.     UPC's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though its liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

26.     UPC failed to explain to Plaintiffs the reasons for its decision not to include all of Plaintiffs' covered damages in its adjustment and/or payment(s) on the Claim.  Furthermore, UPC did not communicate that future settlements or payments would be forthcoming to pay for the entire amount of Plaintiffs' loss, nor did it provide any explanation for its refusal to adequately settle Plaintiffs' Claim.   UPC's conduct is a violation of the TEXAS INSURANCE CODE, UNFAIR SETTLEMENT PRACTICES.  TEX. INS. CODE §541.060(a)(3).

27.     Although promptly reported by Plaintiffs to UPC, UPC did not properly inspect the Property and failed to account for and/or undervalued many of Plaintiffs' damages, both exterior and interior. UPC's unfair settlement practice, as described above, of refusing to pay Plaintiffs' full Claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(7).

### NON-COMPLIANCE BY UPC WITH THE TEXAS INSURANCE CODE, PROMPT PAYMENT OF CLAIMS ACT

28.     UPC's conduct constitutes multiple violations of the TEXAS INSURANCE CODE, PROMPT PAYMENT OF CLAIMS ACT. All violations made under this provision are made actionable by TEX. INS. CODE §542.060.

Certified Document Number: 87519159 - Page 7 of 45

29.    UPC's failure—and on-going refusal—to remit full payment of the amounts owed on Plaintiffs' Claim following its receipt of all items, statements, and forms reasonably requested and required by it, from its insureds, constitutes a non-prompt payment of the Claim. TEX. INS. CODE §542.058.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

30.    UPC's conduct constitutes a breach of its common law duty of good faith and fair dealing that UPC, as an insurer in the State of Texas, owes to its insureds on account of the disparity in bargaining power between an insurance company and its individual insureds with respect not only to the drafting of the contract of insurance itself, but also with respect to the handling and payment of insured claims.

31.    UPC's failure, as described above, to adequately or reasonably investigate and adjust Plaintiffs' Claim, despite the fact that at the very same time, UPC knew, or should have known by the exercise of reasonable diligence, that its liability was reasonably clear, constitutes a breach of UPC's duty of good faith and fair dealing to Plaintiffs, which is both non-delegable and continues to exist until such time as the relationship between the parties is transformed by entry of judgment to that of judgment debtor and judgement creditor, respectively.

### NON-COMPLIANCE BY JAMAL HOLMES WITH THE TEXAS INSURANCE CODE, UNFAIR SETTLEMENT PRACTICES

32.    Mr. Holmes' conduct constitutes multiple violations of the TEXAS INSURANCE CODE, UNFAIR SETTLEMENT PRACTICES.  TEX. INS. CODE §541.060(a).  All violations under this article are made actionable by TEX. INS. CODE §541.151.

Certified Document Number: 87519159 - Page 8 of 45

33.     Mr. Holmes is individually liable for his unfair and deceptive acts because he is a "person" as defined by TEX. INS. CODE §541.002(2). The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, UPC's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." TEX. INS. CODE §541.002(2) (emphasis added). (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the TEXAS INSURANCE CODE and subjecting him or her to individual liability)).

34.     Mr. Holmes' unfair settlement practice, as described above, of misrepresenting to Plaintiffs' material facts relating to the loss and to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

35.     Mr. Holmes' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.   TEX. INS. CODE §541.060(a)(2)(A).

36.     The unfair settlement practice of Mr. Holmes, as described above, of failing to provide Plaintiffs promptly with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiffs' Claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.   TEX. INS. CODE §541.060(a)(3).

37.     Mr. Holmes' unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the Claim, or to submit a reservation of rights to

Certified Document Number: 87519159 - Page 9 of 45

Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

38.     Mr. Holmes' unfair settlement practice, as described above, of refusing to conduct a reasonable investigation of Plaintiffs' Claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

## VI. KNOWLEDGE

39.     All of the acts described above, together and singularly, were committed "knowingly" as that term is used in the TEXAS INSURANCE CODE and were a producing cause of Plaintiffs' damages described herein.

## VII. CONDITIONS PRECEDENT

40.     All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred and/or UPC waived the same. This includes, but is not limited to, providing notice pursuant to TEX. INS. CODE §542A.003 and pre-litigation alternative dispute resolution, if any. Plaintiffs plead, would show, and do aver that—to the extent any Defendant or Defendants might allege that Plaintiffs' presuit Notice fails, was invalid, or failed to conform strictly with the timeline required by §542A.003(a)—Plaintiffs' presuit Notice and the filing of this lawsuit fall within the savings clause of §542A.003(d)(1).

## VIII. DAMAGES

41.     Plaintiffs would show that all the acts as alleged herein, taken together or singularly, constitute the producing cause of the damages sustained by Plaintiffs.

42.     As previously mentioned, Plaintiffs' covered losses have not been properly addressed or paid, which has prevented Plaintiffs from making necessary repairs, thus causing further, consequential damage, to the Property while also causing undue hardship and a burden on

Certified Document Number: 87519159 - Page 10 of 45

Plaintiffs. These damages and losses are a direct result of Defendants' mishandling of Plaintiffs' Claim in violation of the terms of the Policy at issue and of the laws set forth above.

43.     For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain with respect to their purchase of the Policy, which is the amount of their Claim, together with attorneys' fees under TEXAS CIVIL PRACTICE & REMEDIES CODE Section 38.001.

44.     For noncompliance with the TEXAS INSURANCE CODE, UNFAIR SETTLEMENT PRACTICES, Plaintiffs are entitled to actual damages, which include the amount of monetary benefits that should have been paid pursuant to the Policy, mental anguish, court costs, interest, and attorneys' fees. For knowing conduct of the acts and conduct described and complained of above, Plaintiffs are entitled to, and hereby seek, recovery of three times their actual damages. TEX. INS. CODE §541.152.

45.     For noncompliance with the TEXAS INSURANCE CODE, PROMPT PAYMENT OF CLAIMS ACT, Plaintiffs are entitled to interest on the amount of the Claim as damages at the applicable rate as determined under TEX. INS. CODE §542.060(a), §542.060(c), and TEX. FIN. CODE §304.003, together with reasonable and necessary attorneys' fees, which shall be taxed as part of the costs in the case.

46.     For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from UPC's breach of its Duty, such as additional costs, economic hardship, additional losses resulting from nonpayment of the amount owed, exemplary damages, and damages for emotional distress.

47.     For the prosecution and collection of this Claim, Plaintiffs have been compelled to engage the services of the attorneys and law firms whose names are subscribed to this pleading. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of

Certified Document Number: 87519159 - Page 11 of 45

Plaintiffs' attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Texas Supreme Court.

## IX.  JURY DEMAND

48.     Plaintiffs request that all causes of action alleged herein be tried before a jury consisting of citizens residing in Harris County, Texas.

## X.  DISCOVERY REQUESTS TO ALL DEFENDANTS

### REQUEST FOR DISCLOSURES

49.     Pursuant to Rule 194.2 of the TEXAS RULES OF CIVIL PROCEDURE, Defendants are required to disclose, within 50 days of receipt of service, the information or material described in TEXAS RULE OF CIVIL PROCEDURE 194.2.

### REQUEST FOR PRODUCTION

50.     Plaintiffs' First Request for Production to Defendant UPC is attached hereto as "Exhibit A". Defendant UPC is required to provide, within 50 days of service of same, its written responses to these Requests, as well as copies of all documents or information responsive to same, to Plaintiffs via counsel, whose names are subscribed to this pleading.

### REQUEST FOR ADMISSION

51.     Plaintiffs' First Request for Admission to Defendant UPC is attached hereto as "Exhibit B". Defendant UPC is required to provide, within 50 days of service, its Responses to these Requests to Plaintiffs via counsel, whose names are subscribed to this pleading.

### INTERROGATORIES

52.     Plaintiff Dave Smothermon's First Set of Interrogatories to Defendant UPC is attached hereto as Exhibit "C-1". Defendant UPC is required to provide, within 50 days of service of same,

Certified Document Number: 87519159 - Page 12 of 45

its verified responses to these Interrogatories to Plaintiffs via counsel, whose names are subscribed to this pleading.

53.       Plaintiff Dave Smothermon's First Set of Interrogatories to Defendant Holmes is attached hereto as Exhibit "C-2". Defendant Holmes is required to provide, within 50 days of service of same, his verified responses to these Interrogatories to Plaintiffs via counsel, whose names are subscribed to this pleading.

<strong>PRAYER</strong>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial hereof, said Plaintiffs shall  have and recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, as to actual damages, treble damages under the TEXAS INSURANCE CODE, and all punitive and exemplary damages as may be found. In addition, Plaintiffs request the award of attorneys' fees for the trial and any appeal of this cause, for all costs of Court on their behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for all such other and further relief, whether by law or at equity, to which they may show themselves to be justly entitled.

Certified Document Number: 87519159 - Page 13 of 45

Respectfully submitted,
**THE COOK LAW FIRM, PLLC**


By: */s/ Andrew C. Cook*
    Andrew C. Cook
    State Bar No. 24057481
    7324 Southwest Freeway, Suite 585
    Houston, Texas  77074
    Tel. (713) 401-2890
    Facsimile:  (682) 200-2849
    Email: acc@texinsurancelaw.com

**AND:**
    Sean H. McCarthy
    State Bar No. 24065706
    WILLIAMS HART BOUNDAS EASTERBY, LLP
    8441 Gulf Freeway, Suite 600
    Houston, Texas  77017
    Tel. (713) 230-2200
    Fax (713) 643-6226
    smccarthy@whlaw.com

**<u>ATTORNEYS FOR PLAINTIFFS</u>**

Certified Document Number: 87519159 - Page 14 of 45

# **<u>EXHIBIT A</u>**

Certified Document Number: 87519159 - Page 15 of 45

CAUSE NO. _____

| | | |
|---|---|---|
| DAVE AND ANGELA | § | IN THE DISTRICT COURT OF |
| SMOTHERMON | § | |
|     *Plaintiffs*, | § | |
| | § | |
| **v.** | § | HARRIS COUNTY, TEXAS |
| | § | |
| UNITED PROPERTY & CASUALTY | § | |
| INSURANCE COMPANY and JAMAL | § | |
| HOLMES | § | |
|     *Defendants.* | § | _____ JUDICIAL DISTRICT |

### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION
### TO DEFENDANT UNITED PROPERTY & CASUALTY INSURANCE COMPANY

COMES NOW Plaintiff, in the above-styled and numbered cause, and requests that United Property & Casualty Insurance Company: (1) answer the Requests for Production separately and fully in writing within 50 days of service. (2) serve your answers to these Requests for Production on Plaintiff by and through their attorney of record, Andrew C. Cook, THE COOK LAW FIRM, PLLC, 7324 Southwest Fwy, Suite 585, Houston, Tx 77074; and (3) produce all documents responsive to the Requests for Production as they are kept in the usual course of business or organized and labeled to correspond to the categories in the requests within 50 days of service at THE COOK LAW FIRM, PLLC. You are also advised that you are under a duty to seasonably amend and/or supplement your responses if you obtain information on the basis of which:

    a.     You know the response made was incorrect or incomplete when made; or

    b.     You know the response, though correct and complete when made, is no longer true and complete, and the circumstances are such that a failure to amend the answer in substance is misleading.

Certified Document Number: 87519159 - Page 16 of 45

Respectfully submitted,

**THE COOK LAW FIRM, PLLC**


By: */s/ Andrew C. Cook*
    Andrew C. Cook
    State Bar No. 24057481
    7324 Southwest Freeway, Suite 585
    Houston, Texas  77074
    Tel. (713) 401-2890
    Facsimile:  (682) 200-2849
    Email: acc@texinsurancelaw.com

**AND:**

    Sean H. McCarthy
    State Bar No. 24065706
    WILLIAMS HART BOUNDAS EASTERBY, LLP
    8441 Gulf Freeway, Suite 600
    Houston, Texas  77017
    Tel. (713) 230-2200
    Fax (713) 643-6226
    smccarthy@whlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## DEFINITIONS AND INSTRUCTIONS

A.     These Requests call for your personal and present knowledge, as well as the present knowledge of your attorneys, investigators and other agents, and for information available to you and to them.

B.     The term "document" shall have the broadest meaning possible under the applicable Rules of Civil Procedure governing this litigation (whether Texas or Federal) and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of annotation or markings, or by appearing in the files of a separate person). The term "document" also includes all electronically stored information ("ESI"), and each specific request for documents shall be deemed to specifically request electronic documents and records.

C.     The terms "relate(s) to," "relating to," or "regarding" shall have a meaning consistent with their usage in the English language in the broadest sense possible; i.e. having any logical or factual connection whatsoever with the subject matter in question.

D.     "Communication" means, without limitation of its generality, statements, discussions, conversations, correspondence, e-mails, texts, instant messages, intranet communications, speeches, meetings, remarks, questions, answers, panel discussions and symposia, whether written or oral. The term includes, without limitation of its generality, communications and statements that are face to face and those that are transmitted by any other method, including, but not limited to, the Internet, e-mail servers (whether internal or external), telephone, networked computers, external storage devices, cloud-based sharing technologies (such as DropBox), or any other method that effectuates a Communication.

E.     If you claim that any document which is required to be identified or produced by you in any response is privileged:

       1.     Identify the document's title and general subject matter;

       2.     State its date;

       3.     Identify all persons who participated in its preparation;

       4.     Identify the persons for whom it was prepared or to whom it was sent;

       5.     State the nature of the privilege claimed; and

       6.     State in detail each and every fact upon which you base your claim for privilege.

F.     "You," "Your," "Yours", "Defendant" and "Defendants" means all Defendants in this case.

G.     "Property" means the property defined in the Petition.

H.     "Policy" means the insurance policy identified in the Petition.

I.     The word "storm" shall refer to the storm described in the Petition that resulted in the claim.

**J.**     "Plaintiff" includes all Plaintiffs and refers to a single Plaintiff or multiple Plaintiffs, if applicable.

Certified Document Number: 87519159 - Page 18 of 45

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO**
**DEFENDANT UNITED PROPERTY AND CASUALTY INSURANCE COMPANY**

1.   All communications and documents, including electronic, between Defendant and Plaintiffs regarding Plaintiffs' claim(s).

     RESPONSE:

2.   All communications and documents, including electronic, between Defendant and any third party regarding Plaintiffs' claim(s).

     RESPONSE:

3.   All communications and documents, including electronic, between Defendant and any other defendant(s) regarding Plaintiffs' claim(s).

     RESPONSE:

4.   All communications and documents, including electronic, between Defendant's business departments, including all persons part of the Defendant company, regarding Plaintiffs' claim(s).

     RESPONSE:

5.   All communications and documents, including electronic, Defendant sent to any other defendant(s) in this cause of action regarding Plaintiffs or the Property, after Plaintiffs made their claim(s) for coverage.

     RESPONSE:

6.   Color copies of all photographs, diagrams, drawings, or other graphic depictions of Plaintiffs or the Property made the basis of this Lawsuit.

     RESPONSE:

7.   Any and all documents, reports, data, emails, notes, photos, videos, manuals, guides, and summaries, regarding the insurance claim(s) made the basis of this lawsuit. -

     RESPONSE:

8.   All reports and other documents from governmental agencies or offices regarding Plaintiffs' Property or containing officially kept information regarding Plaintiffs' Property.

     RESPONSE:

Certified Document Number: 87519159 - Page 19 of 45

9.      Any and all claims files and claim reports, including but not limited to notes, emails, data, photos, videos, manuals, guides, summaries and claim documents, regarding all homeowner insurance claims made by Plaintiffs under their homeowner insurance policy/policies, specifically regarding damage to the exterior and interior of Plaintiffs' Property. This request is limited to the last ten (10) years.

        RESPONSE:

10.     All documents including reports, estimates, data, emails, testing, sampling, videos, and photographs received by Defendant regarding inspections of Plaintiffs' Property made the basis of this Lawsuit.

        RESPONSE:

11.     Any and all records Defendant received, including those obtained by way of deposition by written questions, regarding Plaintiffs' Property made the basis of this Lawsuit.

        RESPONSE:

12.     Any and all records or documents Defendant has reviewed and/or obtained regarding Plaintiffs' Property made the basis of this Lawsuit.

        RESPONSE:

13.     All bulletins or other communications received from the Texas Department of Insurance, the Texas Insurance Commissioner, or their agents, regarding practices in the handling of claims for property damage, hurricane damage, water damage, hail damage, roof damage, and/or wind damage under homeowner insurance policies in Texas. This request is limited to the last five (5) years.

        RESPONSE:

14.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to unfair claims settlement practices, unfair claims handling practices, standards to be met in adjusting or handling first party insurance claims, or avoiding charges of bad faith. This request is limited to the last five (5) years.

        RESPONSE:

15.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §541.060. This request is specifically limited to the last five (5) years.

        RESPONSE:

Certified Document Number: 87519159 - Page 20 of 45

16.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §542.055 *et seq.*.  This request is specifically limited to the last five (5) years.

        RESPONSE:

17.     Any and all materials, documents, statements and/or files that demonstrate Defendant's net worth and Defendant's net income.  This request is limited to the last five (5) years.

        RESPONSE:

18.     Any and all materials, documents, statements and/or files that reflect complaints and/or lawsuits, filed by insureds against Defendant regarding the handling, review and/or adjusting of homeowner insurance claims in Texas.  This request is limited to the last five (5) years.

        RESPONSE:

19.     A copy of each advertisement Defendant has used, published and/or distributed, through any means, in Texas.  This request is limited to the last five (5) years.

        RESPONSE:

20.     Any and all materials reflecting Defendant's attendance policies for adjusters and claims representatives at seminars and/or continuing education classes regarding the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, property damage claims, hurricane claims, hail damage claims, roof damage claims, and/or wind damage claims in Texas.  This request is limited to the last five (5) years.

        RESPONSE:

21.     Any and all computer programs, electronic data, documents, and/or manuals used by the adjusters and claims representatives to perform property damage estimates relating to homeowner insurance claims in Texas, including a complete copy of the computer program used to adjust Plaintiffs' claim(s).  This request is limited to the last five (5) years.

        RESPONSE:

22.     Any and all reference materials, handouts, manuals, outlines, articles, and/or documents that have been distributed by and/or disbursed to Defendant regarding the price estimates of contractors and changes of those estimates within different geographical areas of the State of Texas.  This request is limited to the last five (5) years.

        RESPONSE:

Certified Document Number: 87519159 - Page 21 of 45

23.   Any and all materials, documents, files, invoices, and/or reports of any and all contractors and roofing companies retained to investigate, inspect, and/or evaluate Plaintiffs' claim(s) made the basis of this lawsuit, prepared on behalf of the Defendant.

   <u>RESPONSE</u>:

24.   Any and all materials, documents, files, invoices, and/or reports of any and all contractors and roofing companies retained to investigate, inspect, and/or evaluate claims similar in nature to Plaintiffs' claim(s) asserted in this lawsuit, prepared on behalf of Defendant. This request is limited to the State of Texas.  This request is limited to the last five (5) years.

   <u>RESPONSE</u>:

25.   A complete copy of the entire personnel file(s) of any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit.

   <u>RESPONSE</u>:

26.   The most recent address maintained on file for any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit.

   <u>RESPONSE</u>:

27.   Any and all activity logs relating to Plaintiffs' claim(s) for property damage, hurricane damage, hail damage, roof damage, and/or wind damage to their property, specifically the claim(s) made the basis of this suit.

   <u>RESPONSE</u>:

28.   Any and all documents reflecting company guidelines, procedures, or policies that serve as criteria for evaluating whether claims are covered or excluded by any policy provisions Defendant contends applied to Plaintiffs' claim(s).

   <u>RESPONSE</u>:

29.   Any and all organizational charts for Defendant.

   <u>RESPONSE</u>:

30.   Any and all organizational charts or diagrams for each department, unit, or section of Defendant to which Plaintiffs' claim(s) was assigned.  This request is limited to the last five (5) years.

   <u>RESPONSE</u>:

Certified Document Number: 87519159 - Page 22 of 45

31.     Any and all charts or diagrams reflecting the chain of command or supervisory hierarchy relating to each person involved in handling Plaintiffs' claim(s).

RESPONSE:

32.     Any and all claims and underwriting files for each claim involving property damage, hurricane damage, hail damage, roof damage, and/or wind damage made against Defendant, investigated by any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit in Texas. This request is limited to the last five (5) years.

RESPONSE:

33.     Any and all demand letters received by Defendant after the handling of a claim involving property damage, hurricane damage, hail damage, roof damage, and/or wind damage that was adjusted by any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit. This request is limited to the last five (5) years.

RESPONSE:

34.     Any and all documents reflecting or relating to Defendant's decision to pay or deny additional living expenses to or on behalf of Plaintiffs in this case.

RESPONSE:

35.     Any and all documents relating to the assignment of Plaintiffs' claim(s) to any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit, from the time of hiring through the present.

RESPONSE:

36.     Any and all documents relating to or reflecting referrals of vendors to Plaintiffs or any insured.

RESPONSE:

37.     If you are withholding documents based upon the assertion of a privilege, please produce a privilege log, detailing with reasonable particularity a description of the documents withheld, the number of documents, and the applicable privilege which Defendant claims properly precludes the information discovery.

RESPONSE:

38.     Any and all advanced or specialized certifications of personnel who inspected, investigated, and/or supervised the adjusting of the claim(s) pertaining to the Property made the basis of this Lawsuit.

Certified Document Number: 87519159 - Page 23 of 45

<u>RESPONSE</u>:

39.     Any and all documents, including contracts, rules, guidelines and/or instructions exchanged between Defendant, Plaintiffs, and any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit, from the time of hiring through the present, and any other entities with whom Defendant worked or communicated regarding the Property made the basis of this Lawsuit.

<u>RESPONSE</u>:

40.     All physical or tangible items and/or potentially usable evidence obtained by, or on behalf of, Defendant from the scene of the occurrence made the basis of this suit.

<u>RESPONSE</u>:

41.     Any and all indemnity agreements between Defendant and any other person, firm, or corporation against which a claim of indemnification might be brought because of the facts in this lawsuit.

<u>RESPONSE</u>:

42.     Any and all complaint policies and procedures regarding the handling by Defendant of complaints made by homeowner insureds.  This request is limited to the last five (5) years.

<u>RESPONSE</u>:

43.     Copies of all job descriptions of employees that adjusted or in any way supervised the handling of Plaintiffs' claim(s).

<u>RESPONSE</u>:

44.     All computer files, databases, electronically-stored information or computer-stored information regarding the claims handling procedures and protocols used in Texas related to property damage claims (specifically, hurricane, water, roof and/or catastrophe claims) that have been compiled, prepared, supervised and/or directed by Defendant, which would have been accessible or applicable to the claim(s) made the basis of this lawsuit.  This request is limited to Texas and the time period starting January 1, 2016 to present.  This request includes documents in Defendant's possession as well as in possession of any third party adjusting company or adjuster used by Defendant to adjust such referenced claims from January 1, 2016 to present.

<u>RESPONSE</u>:

45.     True and complete copies of all activity logs filed by the staff and independent adjusters on the file.

Certified Document Number: 87519159 - Page 24 of 45

<u>RESPONSE</u>:

46.     Any and all reports, documents, or correspondence containing the names and locations of all adjusters who have worked on this file to the present.

<u>RESPONSE</u>:

47.     Any and all reports, documents or correspondence reflecting the reserving and payment history of indemnity, expenses, and vendors on this file including but not limited to dates, changes and requests made by the adjusters.  This request is limited to the last five (5) years.

<u>RESPONSE</u>:

48.     Any and all correspondence and lawsuits involving vendors, staff or management involved with property claims, property damage, hurricane damage, hail damage, roof damage, and/or wind damage claims from 2012 to present.

<u>RESPONSE</u>:

49.     Any and all correspondence and lawsuits concerning the issues of honesty, conflict of interest, criminal actions, past criminal record, criminal conduct, fraud investigation and/or inappropriate behavior of any person associated with the handling of claims files, management of property damage, hail damage, roof damage and/or wind damage claims, including staff and vendors.

<u>RESPONSE</u>:

50.     Any and all answers made in previous discovery requests for lists or databases of property damage, hurricane damage, hail damage, roof damage and/or wind damage.

<u>RESPONSE</u>:

51.     Any and all answers and affidavits made by Defendant and its counsel in previous discovery requests for training procedures, and training manuals for property damage, hurricane damage, hail damage, roof damage, and/or wind damage claims.

<u>RESPONSE</u>:

52.     Any and all reports, documents or correspondence containing names of designated individuals who gave testimony as Person Most Knowledgeable for claims, property damage, hurricane damage, catastrophe, hail damage, roof damage, and/or wind damage claims for 2012 through the present. Include a list of the lawsuits where testimony was given.

<u>RESPONSE</u>:

53. Any and all reports, documents or correspondence containing lists of attendees, dates, and locations of all meetings conducted by Defendant for all independent adjusters and Defendant's staff for property damage claims, Hurricane Harvey claims, wind damage claims, hail damage claims, and/or roof damage claims training. This request is limited to the last ten (10) years.

   RESPONSE:

54. Any and all reports, documents or correspondence containing lists of files with written complaints or Department of Insurance complaints on property damage, hurricane damage, wind damage, hail damage, and/or roof damage claims previously gathered and produced in other TDI complaints or lawsuits. This request is limited to the last five (5) years.

   RESPONSE:

55. Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiffs under the insurance policy in effect during the time of the insurance claim made the basis of this lawsuit, and which was issued by Defendant.

   RESPONSE:

56. Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiffs regarding the insurance claim made the basis of this lawsuit.

   RESPONSE:

57. Studies commissioned by Defendant, including any done by a law firm, to analyze their claim management strategies, and/or to help them improve corporate profits.

   RESPONSE:

58. Affidavits or depositions of the employee(s) who handled Plaintiffs' claim(s), or their supervisors, in other cases involving the same or similar allegations in this case.

   RESPONSE:

59. For any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert: all documents and tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of a testifying expert's testimony.

   RESPONSE:

60. Pursuant to Texas Rule of Evidence 609(f), provide all documents evidencing a conviction of crime which you intend to use as evidence to impeach Plaintiff or any witnesses.

Certified Document Number: 87519159 - Page 26 of 45

RESPONSE:

61.  All correspondence, whether hand written, typed, computer generated, or emails regarding pricing used by Defendant in the adjusting of wind, hail, or claims in Harris County, Texas. This request is limited to the past three (3) years.

    RESPONSE:

62.  All correspondence, whether hand written, typed, computer generated, or emails regarding variations from Defendant's price list, including, but not limited to, when a variation is permissible, who is authorized to make such variations and what documentation, if any, must be included in a file with a pricing variation.

    RESPONSE:

63.  All correspondence, whether hand written, typed, computer generated, emails, instructions, procedures and/or company policies regarding the unit roofing prices used by Defendant for wind, hail, or claims in Harris County, Texas., including, but not limited to, what items Defendant alleges to be included in these unit prices. This request is limited to the past three (3) years.

    RESPONSE:

64.  All communications and documents, including electronic, regarding Defendant's process of selecting engineers in its adjusting process. This request is limited to the last five years.

    RESPONSE:

65.  All communications and documents, including electronic, regarding coverage disputes between Defendant and engineers in the adjusting process.

    RESPONSE:

66.  All communications and documents, including electronic, regarding the payment of overhead and profit. This request is limited to the last five years.

    RESPONSE:

67.  All communications and documents, including electronic, regarding Defendant's process for storing and retrieving documents and emails.

    RESPONSE:

68.     All communications and documents, including electronic, regarding Defendant's use of depreciation in insurance claims, including, but not limited to, how depreciation is calculated on a particular item and what training, if any, adjusters employed by or working on behalf of Defendant receive on calculating depreciation and what evidence Defendant requires a policyholder to present in order to receive the holdback depreciation on his claim. This request is limited to the last five years.

RESPONSE:

Certified Document Number: 87519159 - Page 28 of 45

# **<u>EXHIBIT B</u>**

Certified Document Number: 87519159 - Page 29 of 45

CAUSE NO. _____

| | | |
|---|---|---|
| DAVE AND ANGELA SMOTHERMON | § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| UNITED PROPERTY & CASUALTY INSURANCE COMPANY and JAMAL HOLMES | § | |
| | § | |
| | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

**PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS
TO DEFENDANT UNITED PROPERTY & CASUALTY INSURANCE COMPANY**

COMES NOW Plaintiff, in the above-styled and numbered cause, and requests that United Property & Casualty Insurance Company: (1) answer the following Request for Admissions separately and fully in writing under oath within 50 days of service; (2) serve your answers to the Request for Admissions on Plaintiff by and through their attorney of record, Andrew C. Cook, THE COOK LAW FIRM, PLLC, 7324 Southwest Fwy, Suite 585, Houston, Tx 77074; You are also advised that you are under a duty to seasonably amend and/or supplement your responses if you obtain information on the basis of which:

 a. You know the response made was incorrect or incomplete when made; or

 b. You know the response, though correct and complete when made, is no longer true and complete, and the circumstances are such that a failure to amend the answer in substance is misleading.

Certified Document Number: 87519159 - Page 30 of 45

Respectfully submitted,
**THE COOK LAW FIRM, PLLC**


By: _/s/ Andrew C. Cook_
      Andrew C. Cook
      State Bar No. 24057481
      7324 Southwest Freeway, Suite 585
      Houston, Texas  77074
      Tel. (713) 401-2890
      Facsimile:  (682) 200-2849
      Email: acc@texinsurancelaw.com

**AND:**
      Sean H. McCarthy
      State Bar No. 24065706
      WILLIAMS HART BOUNDAS EASTERBY, LLP
      8441 Gulf Freeway, Suite 600
      Houston, Texas  77017
      Tel. (713) 230-2200
      Fax (713) 643-6226
      smccarthy@whlaw.com

**<u>ATTORNEYS FOR PLAINTIFFS</u>**

Certified Document Number: 87519159 - Page 31 of 45

**PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO**
**DEFENDANT UNITED PROPERTY AND CASUALTY INSURANCE COMPANY**

1. Admit Plaintiffs submitted the claim for storm damage identified with Claim No. 2017TX027017 within the deadlines prescribed by the Policy.

**RESPONSE:**

2. Admit Plaintiffs fully complied with all contractual obligations imposed by the Policy.

**RESPONSE:**

3. Admit that Defendant UPC should assist its policyholders with their insurance claims.

**RESPONSE:**

4. Admit that Defendant UPC must disclose to its insureds all benefits, coverages, and time limits that may apply to their claims.

**RESPONSE:**

5. Admit that Defendant UPC should treat its policyholders' interests as no less than equal to its own.

**RESPONSE:**

6. Admit that Defendant UPC issued an Insurance Policy (Policy No. UTH032305601) providing property insurance coverage for the Property located at 2106 Orchard Country Lane. Houston, Harris County Texas to Plaintiffs: Dave and Angela Smothermon.

**RESPONSE:**

7. Admit that Plaintiffs paid Defendant UPC for the Insurance Policy (Policy No.: UTH032305601).

**RESPONSE:**

8. Admit that Defendant UPC accepted Plaintiff(s)' money in exchange for its issuance of the Insurance Policy (Policy No.: UTH032305601).

**RESPONSE:**

9. Admit that The Insurance Policy (Policy No.: UTH032305601) provides coverage for damage caused by wind, during the Policy Period, to the covered Property.

**RESPONSE:**

Certified Document Number: 87519159 - Page 32 of 45

10. Admit that The Insurance Policy (Policy No.: UTH032305601) provides coverage for damage caused by hail, during the Policy Period, to the covered Property.

**RESPONSE:**

11. Admit that Plaintiff(s) submitted a claim (Claim No.: 2017TX027017) to Defendant UPC for damage to the covered Property caused by wind.

**RESPONSE:**

12. Admit that Defendant UPC, either itself or through a third-party, investigated Claim No. 2017TX027017.

**RESPONSE:**

13. Admit that as part of its investigation of Claim No. 2017TX027017, Defendant UPC, either itself or through a third-party, assigned a Date of Loss to the underlying event for which Plaintiff(s) sought coverage.

**RESPONSE:**

14. Admit that The Date of Loss assigned to Claim No. 2017TX027017 occurred during the Policy Period of Insurance Policy (Policy No.: UTH032305601).

**RESPONSE:**

15. Admit that Under the terms of the Insurance Policy (Policy No.: UTH032305601), in order for Plaintiff(s) to be entitled to receive monetary Policy Benefits, there must be a covered loss that exceeds the amount of Plaintiff(s)' Deductible.

**RESPONSE:**

16. Admit that During its investigation of Claim No. 2017TX027017, and prior to the date it first anticipated litigation, Defendant UPC determined that Plaintiff(s) were not entitled to monetary Policy Benefits for this claim.

**RESPONSE:**

17. Admit that During its investigation of Claim No. 2017TX027017, and prior to the date it first anticipated litigation, UPC determined that Plaintiff(s) were entitled to monetary Policy Benefits for this claim.

**RESPONSE:**

18. Admit that Prior to the date it first anticipated litigation, UPC denied coverage for Claim No.: 2017TX027017.

Certified Document Number: 87519159 - Page 33 of 45

**RESPONSE:**

19. Admit that Prior to the date it first anticipated litigation, UPC accepted coverage for Claim No.: 2017TX027017.

**RESPONSE:**

20. Admit that Prior to the date it first anticipated litigation, Defendant UPC communicated to Plaintiff(s) its determination that Plaintiff(s) were not entitled to monetary Policy Benefits for Claim No. 2017TX027017.

**RESPONSE:**

21. Admit that Prior to the date it first anticipated litigation, Defendant UPC communicated to Plaintiff(s) its determination that Plaintiff(s) were entitled to monetary Policy Benefits for Claim No. 2017TX027017.

**RESPONSE:**

22. Admit that Prior to the date it first anticipated litigation, Defendant UPC provided monetary Policy Benefits to Plaintiff(s) for Claim No. 2017TX027017.

**RESPONSE:**

23. Admit that Prior to the date it first anticipated litigation, Defendant UPC did not provide monetary Policy Benefits to Plaintiff(s) for Claim No. 2017TX027017.

**RESPONSE:**

Certified Document Number: 87519159 - Page 34 of 45

# **<u>EXHIBIT C-1</u>**

Certified Document Number: 87519159 - Page 35 of 45

Certified Document Number: 87519159 - Page 36 of 45

CAUSE NO. _____

| | | |
|---|---|---|
| **DAVE AND ANGELA** | § | **IN THE DISTRICT COURT OF** |
| **SMOTHERMON** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **UNITED PROPERTY & CASUALTY** | § | |
| **INSURANCE COMPANY and JAMAL** | § | |
| **HOLMES** | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

### DAVE SMOTHERMON'S FIRST SET OF INTERROGATORIES
### TO DEFENDANT UNITED PROPERTY & CASUALTY INSURANCE COMPANY

COMES NOW Plaintiff, in the above-styled and numbered cause, and requests that United Property & Casualty Insurance Company: (1) answer the following Interrogatories separately and fully in writing under oath within 50 days of service; (2) serve your answers to these Interrogatories on Plaintiff by and through their attorney of record, Andrew C. Cook, THE COOK LAW FIRM, PLLC, 7324 Southwest Fwy, Suite 585, Houston, Tx 77074; You are also advised that you are under a duty to seasonably amend and/or supplement your responses if you obtain information on the basis of which:

    a.      You know the response made was incorrect or incomplete when made; or

    b.      You know the response, though correct and complete when made, is no longer true and complete, and the circumstances are such that a failure to amend the answer in substance is misleading.

Respectfully submitted,

**THE COOK LAW FIRM, PLLC**

By: */s/ Andrew C. Cook*

Andrew C. Cook
State Bar No. 24057481
7324 Southwest Freeway, Suite 585
Houston, Texas  77074
Tel. (713) 401-2890
Facsimile:  (682) 200-2849
Email: acc@texinsurancelaw.com

**AND:**

Sean H. McCarthy
State Bar No. 24065706
WILLIAMS HART BOUNDAS EASTERBY, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas  77017
Tel. (713) 230-2200
Fax (713) 643-6226
smccarthy@whlaw.com

**ATTORNEYS FOR PLAINTIFFS**

Certified Document Number: 87519159 - Page 37 of 45

**PLAINTIFF DAVE SMOTHERMON'S FIRST SET OF INTERROGATORIES
TO DEFENDANT UNITED PROPERTY AND CASUALTY INSURANCE COMPANY**

1.      Identify all persons and entities involved, associated, or in any way related to the investigation or adjustment of 2017TX027017.

**ANSWER:**


2.      Identify all persons involved in any coverage decisions with respect to 2017TX027017.

**ANSWER:**


3.      Please identify all evidence that may be used to impeach, by proof of final conviction, any witness, including Plaintiff, by stating the following identifying information pursuant to Rule 609 of the Texas Rules of Evidence:

      a.   The name of the accused;

      b.   The charged offense;

      c.   Whether the crime was a felony or involved moral turpitude;

      d.   The date of final conviction; and

      e.   The style, case number, and county of the proceeding.

**ANSWER:**


4.      Pursuant to Rule 193.3(b) of the Texas Rules of Civil Procedure, identify any documents that have been withheld from discovery by this Defendant, based on a claim of privilege either in response to a Request for Disclosure or a Request for Production.

**ANSWER:**


5.      Identify any and all rebuttal or impeaching witnesses who may be called to testify at trial.

**ANSWER:**


6.      Please list those expert witnesses (if any) identified by Plaintiff whom you contend are not qualified to render opinions under the standards set forth in *Robinson v. E.I. DuPont de Nemours*, 923 S.W.2d 549 (Tex. 1995), or in any subsequent opinion by the Texas Supreme Court which you contend extends the holdings of *Robinson*.  Please state the basis of your contention that they are not qualified.

Certified Document Number: 87519159 - Page 38 of 45

**ANSWER:**

7.   If you contend that any opinion rendered by any expert identified by Plaintiff is not "reliable" within the meaning of *Robinson v. E.I. DuPont de Nemours*, 923 S.W.2d 549 (Tex. 1995), or in any subsequent opinion by the Texas Supreme Court which you contend extends the holdings of *Robinson*, please state the basis of your contention.

**ANSWER:**

8.   If you or any individual adjuster or claims handler that was assigned by a named Defendant in this lawsuit to adjust or handle the claim made basis of this lawsuit have been convicted of a felony or other crime involving moral turpitude, identify the nature of the offense and the date and place of such conviction.

**ANSWER:**

9.   State the legal theories and describe the factual bases, for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §541.060.

**ANSWER:**

10.   State the legal theories and describe the factual bases for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.055.

**ANSWER:**

11.   State the legal theories and describe the factual bases for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.056.

**ANSWER:**

12.   State the legal theories and describe the factual bases for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.058

**ANSWER:**

Certified Document Number: 87519159 - Page 39 of 45

13.     Identify by name, address, and telephone number any expert witness who is not expected to be called as a witness, but whose work product was reviewed by or forms the basis either in whole or in part of the opinions of an expert who is to be called as a witness.

**ANSWER:**

14.     For each consulting expert whose work product has been reviewed or relied upon by a testifying expert, please state:

   a.   The number of times that expert has been retained by a defendant in any case;
   b.   The number of times that expert has been retained by a plaintiff in any case;
   c.   The number of times that expert has been retained by the attorney representing Defendant in this suit;
   d.   The number of times that expert has been retained by the law firm representing Defendant in this suit; and
   e.   The amount of compensation received or to be received in this case.

**ANSWER:**

15.     Identify the location where Defendant keeps, stores, or maintains any Texas Department of Insurance bulletin, communication, or document that explains, addresses, or relates to the proper application of overhead and profit to homeowners' property damage claims.

**ANSWER:**

16.     Identify the location where Defendant keeps, stores, or maintains any Texas Department of Insurance bulletin, communication, or document that explains, addresses, or relates to the proper application of depreciation to homeowners' property damage claims.

**ANSWER:**

Certified Document Number: 87519159 - Page 40 of 45

# **<u>EXHIBIT C-2</u>**

Certified Document Number: 87519159 - Page 41 of 45

CAUSE NO. _____

| | | |
|---|---|---|
| **DAVE AND ANGELA** | § | **IN THE DISTRICT COURT OF** |
| **SMOTHERMON** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **UNITED PROPERTY & CASUALTY** | § | |
| **INSURANCE COMPANY and JAMAL** | § | |
| **HOLMES** | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

### DAVE SMOTHERMON'S FIRST SET
### OF INTERROGATORIES TO DEFENDANT JAMAL HOLMES

COMES NOW Plaintiff, in the above-styled and numbered cause, and requests that Jamal Holmes: (1) answer the following Interrogatories separately and fully in writing under oath within 50 days of service; (2) serve your answers to these Interrogatories on Plaintiff by and through their attorney of record, Andrew C. Cook, THE COOK LAW FIRM, PLLC, 7324 Southwest Fwy, Suite 585, Houston ,Tx 77074; You are also advised that you are under a duty to seasonably amend and/or supplement your responses if you obtain information on the basis of which:

    a.      You know the response made was incorrect or incomplete when made; or

    b.      You know the response, though correct and complete when made, is no longer true and complete, and the circumstances are such that a failure to amend the answer in substance is misleading.

Certified Document Number: 87519159 - Page 42 of 45

Respectfully submitted,
**THE COOK LAW FIRM, PLLC**


By: /s/ Andrew C. Cook
    Andrew C. Cook
    State Bar No. 24057481
    7324 Southwest Freeway, Suite 585
    Houston, Texas  77074
    Tel. (713) 401-2890
    Facsimile:  (682) 200-2849
    Email:  acc@texinsurancelaw.com

**AND:**

    Sean H. McCarthy
    State Bar No. 24065706
    WILLIAMS HART BOUNDAS EASTERBY, LLP
    8441 Gulf Freeway, Suite 600
    Houston, Texas  77017
    Tel. (713) 230-2200
    Fax (713) 643-6226
    smccarthy@whlaw.com

**ATTORNEYS FOR PLAINTIFFS**

Certified Document Number: 87519159 - Page 43 of 45

**PLAINTIFF DAVE SMOTHERMON'S FIRST SET OF**
**INTERROGATORIES TO DEFENDANT JAMAL HOLMES**

1.    Identify all persons and entities involved, associated, or in any way related to the investigation or adjustment of 2017TX027017.

**ANSWER:**

2.    Identify all persons involved in any coverage decisions with respect to 2017TX027017.

**ANSWER:**

3.    Please identify all evidence that may be used to impeach, by proof of final conviction, any witness, including Plaintiff, by stating the following identifying information pursuant to Rule 609 of the Texas Rules of Evidence:

       a.   The name of the accused;

       b.   The charged offense;

       c.   Whether the crime was a felony or involved moral turpitude;

       d.   The date of final conviction; and

       e.   The style, case number, and county of the proceeding.

**ANSWER:**

4.    Pursuant to Rule 193.3(b) of the Texas Rules of Civil Procedure, identify any documents that have been withheld from discovery by this Defendant, based on a claim of privilege either in response to a Request for Disclosure or a Request for Production.

**ANSWER:**

5.    Identify any and all rebuttal or impeaching witnesses who may be called to testify at trial.

**ANSWER:**

6.    Please list those expert witnesses (if any) identified by Plaintiff whom you contend are not qualified to render opinions under the standards set forth in *Robinson v. E.I. DuPont de Nemours*, 923 S.W.2d 549 (Tex. 1995), or in any subsequent opinion by the Texas Supreme Court which you contend extends the holdings of *Robinson*.  Please state the basis of your contention that they are not qualified.

**ANSWER:**

7.   If you contend that any opinion rendered by any expert identified by Plaintiff is not "reliable" within the meaning of *Robinson v. E.I. DuPont de Nemours*, 923 S.W.2d 549 (Tex. 1995), or in any subsequent opinion by the Texas Supreme Court which you contend extends the holdings of *Robinson*, please state the basis of your contention.

**ANSWER:**

8.   If you or any individual adjuster or claims handler that was assigned by a named Defendant in this lawsuit to adjust or handle the claim made basis of this lawsuit have been convicted of a felony or other crime involving moral turpitude, identify the nature of the offense and the date and place of such conviction.

**ANSWER:**

**9.**   State the legal theories and describe the factual bases, for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §541.060.

**ANSWER:**

10.   Identify by name, address, and telephone number any expert witness who is not expected to be called as a witness, but whose work product forms the basis either in whole or in part of the opinions of an expert who is to be called as a witness.

**ANSWER:**

11.   For each consulting expert whose work product has been reviewed or relied upon by a testifying expert, please state:

   a.   The number of times that expert has been retained by a defendant in any case;
   b.   The number of times that expert has been retained by a plaintiff in any case;
   c.   The number of times that expert has been retained by the attorney representing Defendant in this suit;
   d.   The number of times that expert has been retained by the law firm representing Defendant in this suit; and
   e.   The amount of compensation received or to be received in this case.

**ANSWER:**

Certified Document Number: 87519159 - Page 45 of 45



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 13, 2019

Certified Document Number:      87519159 Total Pages:  45

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

10/8/2019 5:29:27 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 37493421
By: HILL, MARCELLA D
Filed: 10/8/2019 5:29:27 PM

# CIVIL CASE INFORMATION SHEET

**CAUSE NUMBER** *(FOR CLERK USE ONLY)*: _____     **COURT** *(FOR CLERK USE ONLY)*: _____

**STYLED**   David and Angela Smothermon v. United Property and Casualty Insurance Company and Jamal Holmes
*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| **Name:** Andrew C.Cook<br><br>**Email:** acc@texinsurancelaw.com | **Plaintiff(s)/Petitioner(s):**<br>David Smothermon<br>Angela Smothermon | ☒ Attorney for Plaintiff/Petitioner<br>☐ *Pro Se* Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other: _____ |
| **Address:** 7324 Southwest Fwy, #585<br><br>**Telephone:** 713-401-2890 | **Defendant(s)/Respondent(s):**<br>United Property and Casualty<br>Insurance Company and<br>Jamal Holmes | **Additional Parties in Child Support Case:**<br><br>**Custodial Parent:**<br>_____ |
| **City/State/Zip:** Houston, Tx 77074<br><br>**Fax:** 682-200-2849 | | **Non-Custodial Parent:**<br>_____ |
| **Signature:** _____<br><br>**State Bar No:** 24057481 | [Attach additional page as necessary to list all parties] | **Presumed Father:**<br>_____ |

**2. Indicate case type, or identify the most important issue in the case** *(select only 1)*:

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br>_____<br><br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☒ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract:<br>_____ | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional<br>  Liability:<br>_____<br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability<br>  List Product:<br>_____<br>☐ Other Injury or Damage:<br>_____ | ☐ Eminent Domain/<br>  Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property:<br>_____<br><br>**Related to Criminal Matters**<br>☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus—<br>  Pre-indictment<br>☐ Other: _____ | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children<br><br>**Other Family Law**<br>☐ Enforce Foreign<br>  Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities<br>  of Minority<br>☐ Other: _____ | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br><br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order<br><br>**Parent-Child Relationship**<br>☐ Adoption/Adoption with<br>  Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Parentage/Paternity<br>☐ Termination of Parental<br>  Rights<br>☐ Other Parent-Child:<br>_____ |
| **Employment** | **Other Civil** | | | |
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment:<br>_____ | ☐ Administrative Appeal<br>☐ Antitrust/Unfair<br>  Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: _____ | | |
| **Tax** | **Probate & Mental Health** | | | |
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: _____ | | |

**3. Indicate procedure or remedy, if applicable** *(may select more than 1)*:

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

**4. Indicate damages sought** *(do not select if it is a family law case)*:
☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☒ Over $100, 000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☐ Over $1,000,000

Rev 2/13



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   November 13, 2019

Certified Document Number:        87519161 Total Pages:  1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

11/8/2019 1:52 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 38353437
By: Bristalyn Daniels
Filed: 11/8/2019 1:52 PM

CAUSE NO. 2019-74126

| | | |
|---|---|---|
| DAVE AND ANGELA SMOTHERMON | § | IN THE DISTRICT COURT OF |
|     Plaintiffs, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| UNITED PROPERTY & CASUALTY | § | |
| INSURANCE COMPANY | § | |
|     Defendant. | § | 165TH JUDICIAL DISTRICT |

**SPECIAL EXCEPTIONS, ORIGINAL ANSWER, AFFIRMATIVE DEFENSES
AND REQUESTS FOR DISCLOSURES OF DEFENDANT,
UNITED PROPERTY & CASUALTY INSURANCE COMPANY**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, United Property & Casualty Insurance Company ("UPC") in the above-entitled and numbered cause and files this, its Special Exceptions, Original Answer, Affirmative Defenses and Requests for Disclosure to Plaintiffs' Original Petition (the "Petition"), and would respectfully show unto the Court the following.

**I.
GENERAL DENIAL**

UPC asserts a general denial as is authorized by Rule 92 of the Texas Rules of Civil Procedure, and requests that Plaintiffs be required to prove their charges and allegations against UPC by a preponderance of the evidence as is required by the Constitution and law of the State of Texas.

**II.
SPECIAL EXCEPTIONS**

**FIRST SPECIAL EXCEPTION
Plaintiffs' Breach of Contract Claim**

UPC specially excepts to the breach of contract cause of action in Plaintiffs' Original Petition, in which Plaintiffs vaguely and generally allege UPC breached the insurance contract. This

Certified Document Number: 88010783 - Page 1 of 22

vague and indefinite breach of contract claim failed to provide: (1) fair notice of the elements and facts of the loss allegedly generally sustained by Plaintiffs; (2) fair notice of facts showing Plaintiffs' alleged loss was covered under the terms of the insurance contract at issue; or (3) fair notice of the acts or omissions by UPC that amount to a breach of the contract, if any, to Plaintiffs.[1]

The basic elements of a cause of action for breach of contract are: (1) there is a valid enforceable contract; (2) plaintiff performed its contractual obligations; (3) defendant committed a material breach of the contract; and (4) defendant's breach caused the injury for which plaintiff seeks damages. Plaintiffs should be required to amend their breach of contract claim and state with particularity: (1) the facts and elements supporting their alleged loss; (2) the facts demonstrating the portion of the losses covered by the contract of insurance in question; (3) the acts or omissions by UPC that allegedly amount to a breach of the contract, if any; and (4) the maximum damages sought by Plaintiffs for the alleged breach.

**SECOND SPECIAL EXCEPTION**
**<u>Plaintiffs' Claims for Breach of the Duty of Good Faith and Fair Dealing</u>**

UPC specially excepts to Plaintiffs' claims for breach of the statutory and common law duty of good faith and fair dealing, to the extent such claims are asserted in the Petition, because Plaintiffs failed to plead all of the elements of the causes of action. Instead, Plaintiffs alleged legal theories and statements of the law without the benefit of any factual allegations.

Plaintiffs failed to give UPC fair notice of the elements, facts, and circumstances supporting their claims of breach of the statutory and common law duty of good faith and fair dealing. Plaintiffs should be required to file an amended pleading that sets forth the elements, facts and factual

---

[1] *Subia v. Texas Department of Human Services*, 750 S.W.2d 827, 829 (Tex. App. – El Paso 1988, no writ) (trial court can order the Plaintiff to specifically plead a cause of action which is originally pled in general terms).

allegations and evidence in support of Plaintiffs' claims for breach of the statutory and common law duty of good faith and fair dealing and all related damages.[2]

**THIRD SPECIAL EXCEPTION**
**<u>Plaintiffs' Claims for Non-Compliance with the Texas Insurance Code</u>**

UPC specially excepts to the causes of action in the Petition for non-compliance with the Texas Insurance Code, because Plaintiffs' claims regarding any alleged Insurance Code violation are deficient.  The elements for a cause of action for violation of the requirements of Chapter 541 of the Texas Insurance Code are: (1) Plaintiffs are "persons" as defined by the Texas Insurance Code; (2) Defendant's acts or practices violated a section of the Insurance Code, violated Section 17.46(b) of the Texas Business & Commerce Code, or a tie-in provision of the Texas Business & Commerce Code; and (3) Defendant's alleged acts or practices were a producing cause of the actual damage to Plaintiffs.[3]

Plaintiffs' vague and indefinite claims regarding alleged violations of Section 541 of the Texas Insurance Code are deficient.[4]  Plaintiffs fail to give fair notice of the facts and circumstances supporting the alleged violations of Section 541 of the Texas Insurance Code.  Plaintiffs should be required to file an amended pleading that sets forth facts supporting their claim that UPC violated Section 541 of the Texas Insurance Code and any resulting damages.

Plaintiffs generally allege that UPC violated subparts of the Texas Insurance Code, but fail to assert any facts predicating these claims.  Plaintiffs should be required to file an amended pleading

---

[2] *See*, *Massey v. Armco Steel Company*, 652 S.W.2d 932, 934 (Tex. 1983) (special exceptions are the proper vehicle to question the legal sufficiency of a cause of action in a plaintiff's petition); *Mosely v. Hernandez*, 797 S.W.2d 240, 242 (Tex. App. – Corpus Christi 1990, no writ); *Spencer v. City of Seagoville*, 700 S.W.2d 953, 957 (Tex. App. – Dallas 1985, no writ) (if the plaintiff does not plead all the elements of its causes of action, a defendant may file special exceptions to require plaintiff to plead specifically).

[3] Tex. Insur. Code art. 21.21, section (a); Tex. Bus. & Comm. Code Section 17.46(b); *Crown Life Insurance Company v. Casteel*, 22 S.W.3d 378, 383 (Tex. 1999); *Celtic Life Insurance Company v. Coats*, 885 S.W.2d 96, 99 (Tex. 1994); *Allstate Insurance Company v. Watson*, 876 S.W.2d 145, 147 (Tex. 1994).

[4] *Subia v. Texas Department of Human Services*, 750 S.W.2d 827, 829 (Tex. App. – El Paso 1988, no writ) (allegations solely tracking statutory grounds did not give Defendant fair notice of the facts and circumstances).

Certified Document Number: 88010783 - Page 3 of 22

that sets forth the elements, facts and evidence in support of the Insurance Code violation claims, and all resulting damages.

## FOURTH SPECIAL EXCEPTION
### Plaintiffs' Claims for Attorneys' Fees Under Tex. Civ. Prac. & Rem. Chapter 38 and Texas Insurance Code

Plaintiffs failed to provide UPC with statutorily-compliant written notice (1) 30 days before the date the lawsuit was filed as required by Section 38.002 of the Texas Civil Practices and Remedies Code and (2) 60 days before the date the lawsuit was filed as required by Tex. Insur. Code Section 542A.003 and Section 541.154.   As such, Plaintiffs are not entitled to attorneys' fees pursuant to the Texas Civil Practices and Remedies Code and Texas Insurance Code.

## FIFTH SPECIAL EXCEPTION
### Plaintiff's Claims for Knowing Conduct

UPC specially excepts to the allegation in the Petition, asserting that UPC acted knowingly, as that term is used in the Texas Insurance Code, because no facts were provided to give fair notice of these claims.  UPC requests that Plaintiffs be required to file an amended pleading that set forth each element and supporting fact for their claim of knowing conduct.

## SIXTH SPECIAL EXCEPTION
### Failure to Perform Conditions Precedent

To the extent there exists any UPC policy that provides coverage to Plaintiffs, their claims are barred in whole or in part because Plaintiffs failed to comply with all conditions precedent to any right to recover under the UPC policy.  Specifically, Plaintiffs have failed to prove that the alleged loss was a covered loss, or have failed to segregate that portion of the loss that Plaintiffs claim is covered from that portion of the loss for which there is no coverage.

Plaintiffs have also failed to provide UPC with statutorily-compliant written notice 60 days before the date this lawsuit was filed as required by Tex. Insur. Code §541.154 and Tex. Insur. Code

Certified Document Number: 88010783 - Page 4 of 22

§542A.003(a) and (b)(1), (b)(2),  and (b)(3).  And, as noted above, Plaintiffs also failed to provide UPC with statutorily-compliant written notice 30 days before the date this lawsuit was filed as required by Tex. Civ. Prac. & Rem. Code §38.002.

## SEVENTH SPECIAL EXCEPTION
### Plaintiffs' Claim for Punitive or Exemplary Damages

UPC specially excepts to the allegations contained in the Petition through which Plaintiffs seek an award of punitive or exemplary damages.  Plaintiffs fail to give UPC fair notice of what conduct allegedly entitles them to a punitive or exemplary damage award.  Plaintiffs should be required to re-plead and state with particularity the elements, facts and evidence warranting imposition of punitive or exemplary damages.[5]

## III.
## DEFENSES

### First Defense – Failure to State a Claim

Plaintiffs' claims are barred in whole or in part, because their Petition fails to state a claim on which relief can be granted.  Plaintiffs fail to describe how UPC's alleged breach of the insurance contract could be converted to support any other causes of action, including but not limited to, breach of the duty of good faith and fair dealing or any violation of under the Texas Insurance Code.

### Second Defense – Policy Provisions Which Limit or Preclude Coverage

The insurance policy[6] issued by UPC contains clauses, provisions, agreements, exclusions, limitations and endorsements that preclude or limit coverage, in whole or in part.

The Policy provides:

---

[5] *See, Castleberry v. Goolsby Building Corporation*, 617 S.W.2d 665, 666 (Tex. 1981) (in a suit to recover exemplary damages, Plaintiffs must sufficiently allege allegations of misconduct warranting imposition of same).
[6] UPC issued its Policy Number UTH 0323056 01 42  to its named insureds, Angela Smothermon and Dave Smothermon, for the policy term commencing April 26, 2017 and expiring April 26, 2018 (the "Policy").

Certified Document Number: 88010783 - Page 5 of 22

(UPC 01 42 12 14):

**AGREEMENT**

In reliance on the information you have given us, we agree to provide the insurance coverages indicated on the Policy Declarations.  In return, you must pay the premium when due and comply with the policy terms and conditions and immediately inform us of any change of title, use or occupancy of the residence premises.

* * *

(HO 00 03 05 11):

**SECTION I – PROPERTY COVERAGES**
**A.  Coverage A – Dwelling**
    1.   We cover:

(UPC 01 42 12 14):

        a.   The dwelling on the "residence premises" used mainly as your private residence shown on the Declarations, including attached structures, other than fences, and attached wall-to-wall carpeting if damage to the dwelling is caused by a covered loss.

* * *

**B.  Coverage B – Other Structures**
    1. We cover:
        a.   Other structures on the "residence premises" set apart from the dwelling by a clear space;
        b.   Other structures connected to the dwelling by only a fence, utility line, or similar connection; and
        c.   Fences.

* * *

(HO 03 05 11):

**C.  Coverage C – Personal Property**
    1.   Covered Property
     We cover personal property owned or used by an "insured" while it is anywhere in the world.  After a loss and at your request, we will cover personal property owned by: . . .

* * *

(UPC 01 42 12 14):

**D.  Coverage D – Loss of Use**
    1.   Additional Living Expense

Certified Document Number: 88010783 - Page 6 of 22

If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning:

a.  Any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to:

a.  Repair or replace the damage; or

b.  If you permanently relocate, the shortest time required for your household to settle elsewhere.

In either event, the payment(s) will be limited to (12) consecutive months from the date of the covered loss.

* * *

(HO 00 03 05 11):

### E.  Additional Coverages

**1.  Debris Removal**

    **a.**    We will pay your reasonable expense for the removal of:

        **(1)**    Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

        **(2)**    Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

    This expense is included in the limit of liability that applies to the damaged property.  If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

* * *

**8.  Collapse**

    **a.**    The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

    **b.**    For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

    **c.**    This Additional Coverage – Collapse does not apply to:

        **(1)**    A building or any part of a building that is in danger of falling down or caving in;

        **(2)**    A part of a building that is standing, even if it has separated from another part of the building; or

        **(3)**    A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    **d.**    We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

Certified Document Number: 88010783 - Page 7 of 22

**(1)** The Perils Insured Against named under Coverage C;

**(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

\* \* \*

**(5)** Weight of ran which collects on a roof; or

**e.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

\* \* \*

## SECTION I – PERILS INSURED AGAINST
## A. Coverage A – Dwelling and Coverage B – Other Structures

1. We insure against direct physical loss to property described in Coverages A. and B.

2. We do not insure, however, for loss:

   a. Excluded under Section I – Exclusions;

   b. Involving collapse, including any of the following conditions of property or any part of the property:

      (1) an abrupt falling down or caving in;

      (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

      (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above;

      Except as provided in **E.8.** Collapse under Section I – Property Coverages; or

   c. Caused by:

\* \* \*

      (2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

         (a) fence, pavement, patio or swimming pool;

         (b) footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

         (c) retaining wall or bulkhead that does not support all or part of a building or other structure; or

\* \* \*

      (6) Any of the following:

(HO 04 67 05 11):

    (a)   Wear and tear and marring;

(HO 00 03 05 11):

    (b)   Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

         \* \* \*

(HO 04 67 05 11):

    (f)   Settling, shrinking, bulging, or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, or foundations;

         \* \* \*

(HO 00 03 05 11):

**Exception to c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam within a:

(i)   Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii)   Plumbing, heating, air condition or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure on the "residence premises" but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

         \* \* \*

Under 2.b. and c. above, any ensuing loss to property described in Coverage A and B not precluded by any other provision in this policy is covered.

         \* \* \*

## B.  Coverage C – Personal Property

4816-5862-6988.1

9

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

\* \* \*

2. Windstorm or Hail
   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

\* \* \*

10. Dropped or Falling Objects
    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damage d by a covered event which directly causes the object to drop or fall.  Damage to the dropped or falling object itself is not included.

\* \* \*

(HO 04 67 05 11):

12. Accidental Discharge or Overflow of Water or Steam
    a.  This perils means accidental discharge or overflow of water or steam from whiten a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
    b.  Except as specifically provided by this endorsement, this peril does not include loss:

\* \* \*

    (4) Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

\* \* \*

    d.  Section I – Exclusions A.3. Water, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

(HO 00 03 05 11):

**SECTION I – EXCLUSIONS**

**A.** We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

**3.  Water**
This means:
a.  Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind including storm surge;

   b.  Water which:
     (1) Backs up through sewers or drains; or
     (2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;
   c.  Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or
   d.  Waterborne material carried or otherwise moved by any of the water referred to in A.3.a through A.3.c of this exclusion.

This Exclusion A.3. applies regardless of whether any of the above, in A.3.a. through A.3.d is caused by an act of nature or is otherwise caused.

This Exclusion A.3. applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

\* \* \*

**5.  Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at an after the time of a loss.

\* \* \*

(UPC 01 42 12 14):

**10. "Fungi" or Microbes**

   a.  "Fungi" or microbes means the presence, growth, proliferation, spread of any activity of "fungi" or microbes.

This exclusion also applies to the cost:

   (1) To remove "fungi" or microbes from property covered under Section I – Property Coverages;

   (2) To tear out and replace any part of the building or other covered property as needed to gain access to the "fungi" or microbes; and

   (3) Of testing of air or property to confirm the absence, presence or level of "fungi" or microbes.

   c.  Exclusion 10.a. applies unless the "fungi" or microbes are located upon the portion of covered property which must be repaired or replaced because of direct physical damage resulting from sudden and accidental discharge or overflow of water which would otherwise be covered under the policy. . . . .

   d.  However, the exception to the exclusion described in 10.b. does not include:

   (1) The cost to treat, contain, remove or dispose of the "fungi" or microbes beyond that which is required to repair or replace t he covered property physically damaged by water;

   (2) The cost of any testing of air or property to confirm the absence, presence or level of "fungi" or microbes whether performed prior to during or after removal repair, restoration or replacement;

   (3) The cost of any decontamination of the "residence premises"; and

Certified Document Number: 88010783 - Page 11 of 22

        (4) Any increase in loss under Coverage D – Loss of Use and Additional Coverage 1. Debris Removal resulting from c. (1), (2) and (3).

* * *

**12. Existing Damage**

    a. Damages which occurred prior to the policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or

    b. Claims or damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to the policy inception.

**13. Diminished Value**

We do not cover any loss due to diminished value of any property covered under this policy.

* * *

(HO 00 03 05 11):

**B.** We do not insure for loss to property described in Coverages A. and B. caused by any of the following.  However, any ensuing loss to property described in Coverages A. and B. not precluded by any other provision of this policy is covered.

    1. Weather conditions.  However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

* * *

    3. Faulty, inadequate or defective:

* * *

    b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    c. Materials used in repair, construction, renovation or remodeling; or

    d. Maintenance;

of part or all of any property whether on or off the "residence premises."

**SECTION I – CONDITIONS**

* * *

C.    Duties After Loss

(UPC 01 42 12 14):

    1.    Your Duties After Loss

In cases of a loss to covered property, you must comply with all of the following duties.  We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us.  These duties must be performed either by our or an "insured" seeking coverage.

    a. Give prompt notice to us or our agent.  With respect to loss caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code, any claim must be filed with us not

later than one year after the date of the loss that is the subject of the claim.  However, any such claim may be filed after the first anniversary of the date of the loss for good cause shown by the person filing the claim.

b.  Adjust all losses directly with us;

c.  Notify the police in case of a loss by theft;

d.  Notify the credit card or electronic fund transfer card or access device company in case of loss . . .

e.  Protect the property from further damage.  If repairs to the property are required, you must:

    (1) Provide us with an opportunity to inspect the property in its damaged condition and prior to repairs;

    (2) Provide us with an opportunity to exercise our option to repair;

    (3) Provide us with specifications of damage and detailed repair estimates prior to making repairs;

    (4) Make reasonable and necessary repairs to protect the property; and

    (5) Keep an accurate record of repair expenses;

f.  Cooperate with us in the investigation of a claim;

g.  Prepare an inventory of damaged personal property . . .

h.  As often as we reasonably require:

    (1) Show the damaged property;

    (2) Provide us with records and documents we request and permit us to make copies;

    (3) All insured must submit to examination under oath, while not in the presence of another "insured", and sign the same;

i.  Send to us, within 91 days after our request, your signed, sworn proof of loss on a standard form supplied by us.  We must request a signed, sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss.  Such waiver will not waive our other rights under this policy.

    (1) This proof of loss shall set forth, to the best of your knowledge and belief:

* * *

j.  In the County where the "residence premises" is located; "you", "your" agents, "your" representatives and all "insureds" must submit to examination under oath and sign the same when asked to do so by "us".  At "your" or "our" request, the examinations will be conducted and not in the presence of any other persons except legal representation.

k.  Permit "us" to take samples of damaged property for inspection, testing and analysis; and

l.  Any and all "insureds" must execute all authorizations for the release of information when asked to do so by "us."

* * *

(HO 00 03 05 11):

    D.  Loss Settlement

In this Condition D., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E. 11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

(UPC 01 42 12 14):

    1.  Property of the following types:
      a.  Personal property other than jewelry;
      b.  Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;
      c.  Structures that are not buildings; and
      d.  Grave markers, including mausoleums;
at actual cash value at the time of loss but not more than the amount required to repair or replace.

(HO 00 03 05 11):

    2.  Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
      a.  If, at the time of the loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace without deduction for depreciation, but not more than the lease of the following amounts:
        (1) The limit of liability under this policy that applies to the building;
        (2) The replacement cost of  that part of the building damaged with material of like kind and quality and for like use; or
        (3) The necessary amount actually spent to repair or replace the damaged building.
      If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.
      b.  If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:
        (1) The actual cash value of that part of the building damaged; or
        (2) That portion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total

amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

\* \* \*

d.  We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.  Once actual repair or replacement is complete, we will settle the loss as noted in 2.a and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance on this policy on the building; and

(2) Less than $2,500:

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

\* \* \*

F.  Appraisal

If you and we fail to agree on the amount of loss either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 30 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraiser will separate set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss.

Each party will:

1.  Pay its own appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

(UPC 01 42 12 14):

No suit involving the amount of loss or damage under Section I of the policy can be brought unless an appraisal has been completed.

\* \* \*

H.  Legal Action Against Us

1.  Except as provided in Paragraph 2, no suit or action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy.  Action must be brought against us within two years and one day from the date the cause of action first accrues.  A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

2.  With respect to suits brought in connection with claims for loss caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code:

No action can be brought against us unless there has been compliance with all of the terms of this policy.  The action must be brought before the earlier of the following:

    a.  Two years and one day from the date we accept or reject the claim; or

    b.  Three years and one day from the date of the loss that is the subject of the claim.

As stated in Section I – Conditions, Item F. Appraisal, no suit involving the amount of loss or damage under Section I of the policy can be brought unless an appraisal has been completed.

* * *

Catastrophe Claims

If a claim results from a weather-related catastrophe or a major natural disaster, each claim-handling deadline shown in C. Duties After Loss and J. Loss Payment is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather-related event which:

1. is declared a disaster under the Texas Disaster Act of 1975; or

2. is determined to be a catastrophe by the Texas Department of Insurance.

(HO 00 03 05 11):

## SECTIONS I AND II – CONDITIONS

* * *

B. Waiver or Change of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid.  Our request for an appraisal or examination will not waive any of our rights.

(UPC 03 12 12 14):

## WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

Schedule

| **Windstorm or Hail Deductible Percentage Amount:** |
| --- |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Section I – Conditions

B. Deductible

The following special deductible is added to the policy:

With respect to the peril of Windstorm or Hail, for any one loss, we will pay only that part of the total of all loss payable that exceeds the windstorm or hail percentage deductible.

The dollar amount of the windstorm or hail deductible is determined by multiplying the Coverage A Limit of Liability shown in the Declarations by the deductible percentage amount shown in the Schedule above [or as shown in the Declarations].

Certified Document Number: 88010783 - Page 17 of 22

* * *

No other deductible in the policy applies to loss caused by windstorm or hail.

All other provisions of this policy apply.

(UPC 01 42 12 14):

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

UPC reserves the right to assert other Policy provisions or defenses as discovery in this case advances.

### Third Defense – *Bona Fide* Controversy/Liability Not Reasonably Clear

As to Plaintiffs' extra-contractual claims, a *bona fide* controversy existed and continues to exist concerning Plaintiffs' entitlement, if any, to insurance benefits from UPC, and UPC has the right to dispute coverage based upon the policies and the law and precedent, and view coverage differently from those asserting claims under the policies without facing bad faith liability. UPC will show that a *bona fide* controversy existed and continues to exist regarding any alleged covered loss.

### Fourth Defense – Damage Limitation

Plaintiffs' damages, if any, are limited by the amounts set forth in the limitation provision of the Policy. Plaintiffs' contractual damages cannot exceed the applicable Policy limits.

### Fifth Defense – Reliance on Case Law

UPC reasonably relied on case law from the state and federal courts of Texas, which support UPC's interpretation of the policies as they relate to Plaintiffs' claims.

### Sixth Defense – Absence of Covered Causes for Remaining Claims Precludes Extra-Contractual Liability

The existence of coverage for Plaintiffs' insurance claim is necessary to establish the basis for Plaintiffs' Insurance Code claims. Because Plaintiffs' allegations are generally based on UPC's alleged failure to investigate the claim and pay policy benefits, the existence of any applicable

exclusions, limitations, conditions, or the absence of coverage for any further benefits under the Policy, precludes Plaintiffs' Insurance Code claims and all other extra-contractual claims against UPC.

### Seventh Defense - Failure to Satisfy Conditions Precedent

Plaintiffs did not plead with specificity the performance or occurrence of all conditions precedent.[7]  UPC demands strict proof that each and every condition precedent was performed or has occurred.[8]  To the extent the UPC Policy provides coverage to Plaintiffs, Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to comply with all conditions precedent to any right to recover under the UPC Policy.  Specifically, Plaintiffs have failed to prove that the alleged loss or claims are covered losses or claims under the UPC Policy, and Plaintiffs have failed to segregate that portion of any alleged loss that they claim is covered under the UPC Policy from that portion of the alleged loss that is not covered.

### Eighth Defense – Failure to Provide Statutorily-Compliant Pre-Suit Notice

Plaintiffs failed to provide UPC with the required statutorily-compliant written notice 30 days before the date the lawsuit was filed as required by Tex. Civ. Prac. & Rem. Code §38.002.  Consequently, Plaintiffs are not entitled to attorneys' fees as pled under the Texas Civil Practices and Remedies Code.  Because Plaintiffs failed to provide the statutorily-compliant pre-litigation notice, Plaintiffs are precluded from recovering attorneys' fees and expenses in this matter.

Plaintiffs also failed to provide UPC with statutorily-compliant written notice 60 days before the date the lawsuit was filed as required by Tex. Insur. Code §541.154 and Tex. Insur. Code §542A.003.  Consequently, Plaintiffs are not entitled to attorneys' fees as pled under the Texas

---

[7] *See,* Tex. R. Civ. P. 54.
[8] *See, Grimm v. Grimm*, 864 S.W.2d 160, 162 (Tex. App. – Houston [14th Dist.] 1993, no writ).

Certified Document Number: 88010783 - Page 18 of 22

Insurance Code.  Because Plaintiffs failed to provide the statutorily-compliant pre-litigation notice and demands, Plaintiffs are precluded from recovering attorneys' fees and expenses in this matter.

### Ninth Defense – Due Process

To the extent Plaintiffs pray for punitive or exemplary damages, UPC invokes its rights under the Due Process Clause of the Fifth Amendment of the United States Constitution as applied to the States through the Fourteenth Amendment of the United States Constitution.  UPC affirmatively pleads that Plaintiffs' claim for punitive or exemplary damages violates the Due Process Clauses of the Fifth and Fourteenth Amendments inasmuch as:

1. Punitive or exemplary damages can be assessed in an amount left to the discretion of the judge and jury;

2. A jury award of punitive or exemplary damages need only be based on the vote of ten jurors and does not require a unanimous verdict.

3. To obtain an award of punitive or exemplary damages, Plaintiffs need only prove their claims by a preponderance of the evidence standard and not beyond a reasonable doubt as should be required when punishment awards are assessed;

4. UPC and its officers, all of whom are subject to any award of punitive or exemplary damages, do not have the right to refuse to testify against themselves, but must in fact take the stand or give deposition testimony or subject the company to the consequences of a default judgment;

5. The assessment of punitive or exemplary damages is not based on a clearly defined statutory enactment setting forth a specific intentionality requirement or the specific prerequisites of such a finding and, in effect, such damages can be awarded even though there are no special standards, limits or other statutory requirements to define the means, scope and limit of such awards, rendering such awards unduly vague and unsupportable under the requirements of due process; and

6. In essence, UPC is subject to all the hazards and risks of what amounts to a fine, and, in fact, such awards often exceed normal criminal fines, but UPC receives none of the basic rights accorded to criminal defendants when they are subjected to possible criminal penalties.

## Tenth Defense – Equal Protection

To the extent Plaintiffs pray for punitive or exemplary damages, such request should be denied because it violates UPC's equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States, the provisions of the Eighth Amendment to the Constitution of the United States, and the Constitution of the State of Texas, Article I, Sections 13 and 19.

## Eleventh Defense – Punitive Damage Limitation

Any award of punitive or exemplary damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) two times the amount of economic damages plus $200,000, pursuant to the statutory mandates of the Texas Civil Practices & Remedies Code §§41.002-41.009.

## Twelfth Defense – Offset or Credit

UPC is entitled to any set-offs or credits for prior payments by UPC or other third-parties.

## Thirteenth Defense – Acts or Omissions of Others

The damages allegedly sustained by Plaintiff may have been the result of actions or omission of individuals over whom UPC had not control, including but not limited to Plaintiffs, therefore, UPC is not liable to Plaintiffs.

## Fourteenth Defense – Failure to Mitigate

To the extent Plaintiffs' alleged damages are determined to be the result of a failure by Plaintiffs to take reasonable steps to mitigate the loss, those damages are not recoverable.

## Fifteenth Defense – Reservation of Right of Appraisal

To the extent Plaintiffs present evidence inconsistent with UPC's investigation and conclusions regarding the amount of loss or cost of repair under the Policy, and the parties are

unable to reach an agreement to resolve this matter, UPC reserves the right and does not waive its right under the Policy to invoke appraisal.  The Policy contains an appraisal clause allowing either party to the insurance contract to invoke the appraisal process in the event that there is a disagreement concerning the amount of loss for a covered loss under the Policy.  The Policy requires the parties complete appraisal before any suit on the Policy or claim may proceed.

## IV.
## REQUEST FOR DISCLOSURE

Pursuant to Tex. R. Civ. P. 194, Plaintiffs are requested to disclose the information or material described in Rule 194 within thirty (30) hereof service.

WHEREFORE, United Property & Casualty Insurance Company prays that on final trial and hearing, Plaintiffs take nothing and that United Property & Casualty Insurance Company recover its costs, fees and expenses, and for such other and further relief, at law or in equity, general or special, to which it may show itself justly entitled.

Respectfully Submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

*/s/ Sarah R. Smith*
Sarah R. Smith
Texas Bar No. 24056346
sarah.smith@lewisbrisbois.com
Suzanne A. Schlicher
Texas Bar No. 02601800
suzanne.schlicher@lewisbrisbois.com
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767  Telephone
(713) 759-6830   Facsimile

**ATTORNEYS FOR UNITED PROPERTY &
CASUALTY INSURANCE COMPANY**

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a true and correct copy of the above pleading has been forwarded pursuant to the Texas Rules of Civil Procedure on this 08th day of November, 2019.

*Via E-Serve*
Andrew C. Cook
The Cook Law Firm, PLLC
7324 Southwest Freeway, Suite 585
Houston, Texas 77074
*acc@texinsurancelaw.com*

*Via E-Serve*
Sean H. McCarthy
Williams Hart Boundas Easterby, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
*smccarthy@whlaw.com*

*Attorneys for Plaintiff*

*Attorneys for Plaintiff*

*/s/ Sarah R. Smith*
Sarah R. Smith

4816-5862-6988.1

22



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   November 13, 2019

Certified Document Number:        88010783 Total Pages:  22

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

11/11/2019 8:33 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 38375883
By: Mercedes Ramey
Filed: 11/11/2019 8:33 AM

CAUSE NO. 2019-74126

| | | |
|---|---|---|
| DAVE AND ANGELA SMOTHERMON | § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| UNITED PROPERTY & CASUALTY | § | |
| INSURANCE COMPANY | § | |
| Defendant. | § | 165TH JUDICIAL DISTRICT |

**SPECIAL EXCEPTIONS, FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES
AND REQUESTS FOR DISCLOSURES OF DEFENDANT,
UNITED PROPERTY & CASUALTY INSURANCE COMPANY**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, United Property & Casualty Insurance Company ("UPC") in the above-entitled and numbered cause and files this, its Special Exceptions, First Amended Answer, Affirmative Defenses and Requests for Disclosure to Plaintiffs' Original Petition (the "Petition"), and would respectfully show unto the Court the following.

**I.
GENERAL DENIAL**

UPC asserts a general denial as is authorized by Rule 92 of the Texas Rules of Civil Procedure, and requests that Plaintiffs be required to prove their charges and allegations against UPC by a preponderance of the evidence as is required by the Constitution and law of the State of Texas.

**II.
SPECIAL EXCEPTIONS**

**FIRST SPECIAL EXCEPTION
Plaintiffs' Breach of Contract Claim**

UPC specially excepts to the breach of contract cause of action in Plaintiffs' Original Petition, in which Plaintiffs vaguely and generally allege UPC breached the insurance contract. This

Certified Document Number: 88025193 - Page 1 of 22

vague and indefinite breach of contract claim failed to provide: (1) fair notice of the elements and facts of the loss allegedly generally sustained by Plaintiffs; (2) fair notice of facts showing Plaintiffs' alleged loss was covered under the terms of the insurance contract at issue; or (3) fair notice of the acts or omissions by UPC that amount to a breach of the contract, if any, to Plaintiffs.[1]

The basic elements of a cause of action for breach of contract are: (1) there is a valid enforceable contract; (2) plaintiff performed its contractual obligations; (3) defendant committed a material breach of the contract; and (4) defendant's breach caused the injury for which plaintiff seeks damages.  Plaintiffs should be required to amend their breach of contract claim and state with particularity: (1) the facts and elements supporting their alleged loss; (2) the facts demonstrating the portion of the losses covered by the contract of insurance in question; (3) the acts or omissions by UPC that allegedly amount to a breach of the contract, if any; and (4) the maximum damages sought by Plaintiffs for the alleged breach.

**SECOND SPECIAL EXCEPTION**
**<u>Plaintiffs' Claims for Breach of the Duty of Good Faith and Fair Dealing</u>**

UPC specially excepts to Plaintiffs' claims for breach of the statutory and common law duty of good faith and fair dealing, to the extent such claims are asserted in the Petition, because Plaintiffs failed to plead all of the elements of the causes of action.  Instead, Plaintiffs alleged legal theories and statements of the law without the benefit of any factual allegations.

Plaintiffs failed to give UPC fair notice of the elements, facts, and circumstances supporting their claims of breach of the statutory and common law duty of good faith and fair dealing.  Plaintiffs should be required to file an amended pleading that sets forth the elements, facts and factual

---

[1] *Subia v. Texas Department of Human Services*, 750 S.W.2d 827, 829 (Tex. App. – El Paso 1988, no writ) (trial court can order the Plaintiff to specifically plead a cause of action which is originally pled in general terms).

Certified Document Number: 88025193 - Page 2 of 22

allegations and evidence in support of Plaintiffs' claims for breach of the statutory and common law duty of good faith and fair dealing and all related damages.[2]

### THIRD SPECIAL EXCEPTION
### <u>Plaintiffs' Claims for Non-Compliance with the Texas Insurance Code</u>

UPC specially excepts to the causes of action in the Petition for non-compliance with the Texas Insurance Code, because Plaintiffs' claims regarding any alleged Insurance Code violation are deficient. The elements for a cause of action for violation of the requirements of Chapter 541 of the Texas Insurance Code are: (1) Plaintiffs are "persons" as defined by the Texas Insurance Code; (2) Defendant's acts or practices violated a section of the Insurance Code, violated Section 17.46(b) of the Texas Business & Commerce Code, or a tie-in provision of the Texas Business & Commerce Code; and (3) Defendant's alleged acts or practices were a producing cause of the actual damage to Plaintiffs.[3]

Plaintiffs' vague and indefinite claims regarding alleged violations of Section 541 of the Texas Insurance Code are deficient.[4] Plaintiffs fail to give fair notice of the facts and circumstances supporting the alleged violations of Section 541 of the Texas Insurance Code. Plaintiffs should be required to file an amended pleading that sets forth facts supporting their claim that UPC violated Section 541 of the Texas Insurance Code and any resulting damages.

Plaintiffs generally allege that UPC violated subparts of the Texas Insurance Code, but fail to assert any facts predicating these claims. Plaintiffs should be required to file an amended pleading

---

[2] *See, Massey v. Armco Steel Company*, 652 S.W.2d 932, 934 (Tex. 1983) (special exceptions are the proper vehicle to question the legal sufficiency of a cause of action in a plaintiff's petition); *Mosely v. Hernandez*, 797 S.W.2d 240, 242 (Tex. App. – Corpus Christi 1990, no writ); *Spencer v. City of Seagoville*, 700 S.W.2d 953, 957 (Tex. App. – Dallas 1985, no writ) (if the plaintiff does not plead all the elements of its causes of action, a defendant may file special exceptions to require plaintiff to plead specifically).

[3] Tex. Insur. Code art. 21.21, section (a); Tex. Bus. & Comm. Code Section 17.46(b); *Crown Life Insurance Company v. Casteel*, 22 S.W.3d 378, 383 (Tex. 1999); *Celtic Life Insurance Company v. Coats*, 885 S.W.2d 96, 99 (Tex. 1994); *Allstate Insurance Company v. Watson*, 876 S.W.2d 145, 147 (Tex. 1994).

[4] *Subia v. Texas Department of Human Services*, 750 S.W.2d 827, 829 (Tex. App. – El Paso 1988, no writ) (allegations solely tracking statutory grounds did not give Defendant fair notice of the facts and circumstances).

Certified Document Number: 88025193 - Page 3 of 22

that sets forth the elements, facts and evidence in support of the Insurance Code violation claims, and all resulting damages.

## FOURTH SPECIAL EXCEPTION
**Plaintiffs' Claims for Attorneys' Fees Under Tex. Civ. Prac. & Rem. Chapter 38 and Texas Insurance Code**

Plaintiffs failed to provide UPC with statutorily-compliant written notice (1) 30 days before the date the lawsuit was filed as required by Section 38.002 of the Texas Civil Practices and Remedies Code and (2) 60 days before the date the lawsuit was filed as required by Tex. Insur. Code Section 542A.003 and Section 541.154.   As such, Plaintiffs are not entitled to attorneys' fees pursuant to the Texas Civil Practices and Remedies Code and Texas Insurance Code.

## FIFTH SPECIAL EXCEPTION
**Plaintiff's Claims for Knowing Conduct**

UPC specially excepts to the allegation in the Petition, asserting that UPC acted knowingly, as that term is used in the Texas Insurance Code, because no facts were provided to give fair notice of these claims.  UPC requests that Plaintiffs be required to file an amended pleading that set forth each element and supporting fact for their claim of knowing conduct.

## SIXTH SPECIAL EXCEPTION
**Failure to Perform Conditions Precedent**

To the extent there exists any UPC policy that provides coverage to Plaintiffs, their claims are barred in whole or in part because Plaintiffs failed to comply with all conditions precedent to any right to recover under the UPC policy.  Specifically, Plaintiffs have failed to prove that the alleged loss was a covered loss, or have failed to segregate that portion of the loss that Plaintiffs claim is covered from that portion of the loss for which there is no coverage.

Plaintiffs have also failed to provide UPC with statutorily-compliant written notice 60 days before the date this lawsuit was filed as required by Tex. Insur. Code §541.154 and Tex. Insur. Code

Certified Document Number: 88025193 - Page 4 of 22

§542A.003(a) and (b)(1), (b)(2),  and (b)(3).  And, as noted above, Plaintiffs also failed to provide

UPC with statutorily-compliant written notice 30 days before the date this lawsuit was filed as

required by Tex. Civ. Prac. & Rem. Code §38.002.

### SEVENTH SPECIAL EXCEPTION
### Plaintiffs' Claim for Punitive or Exemplary Damages

UPC specially excepts to the allegations contained in the Petition through which Plaintiffs

seek an award of punitive or exemplary damages.  Plaintiffs fail to give UPC fair notice of what

conduct allegedly entitles them to a punitive or exemplary damage award.  Plaintiffs should be

required to re-plead and state with particularity the elements, facts and evidence warranting

imposition of punitive or exemplary damages.[5]

### III.
### DEFENSES

### First Defense – Failure to State a Claim

Plaintiffs' claims are barred in whole or in part, because their Petition fails to state a claim on

which relief can be granted.  Plaintiffs fail to describe how UPC's alleged breach of the insurance

contract could be converted to support any other causes of action, including but not limited to,

breach of the duty of good faith and fair dealing or any violation of under the Texas Insurance Code.

### Second Defense – Policy Provisions Which Limit or Preclude Coverage

The insurance policy[6] issued by UPC contains clauses, provisions, agreements, exclusions,

limitations and endorsements that preclude or limit coverage, in whole or in part.

The Policy provides:

---

[5] *See, Castleberry v. Goolsby Building Corporation*, 617 S.W.2d 665, 666 (Tex. 1981) (in a suit to recover exemplary damages, Plaintiffs must sufficiently allege allegations of misconduct warranting imposition of same).
[6] UPC issued its Policy Number UTH 0323056 01 42  to its named insureds, Angela Smothermon and Dave Smothermon, for the policy term commencing April 26, 2017 and expiring April 26, 2018 (the "Policy").

Certified Document Number: 88025193 - Page 5 of 22

(UPC 01 42 12 14):

**AGREEMENT**

In reliance on the information you have given us, we agree to provide the insurance coverages indicated on the Policy Declarations.  In return, you must pay the premium when due and comply with the policy terms and conditions and immediately inform us of any change of title, use or occupancy of the residence premises.

\* \* \*

(HO 00 03 05 11):

**SECTION I – PROPERTY COVERAGES**
**A.  Coverage A – Dwelling**
    1.   We cover:

(UPC 01 42 12 14):

        a.   The dwelling on the "residence premises" used mainly as your private residence shown on the Declarations, including attached structures, other than fences, and attached wall-to-wall carpeting if damage to the dwelling is caused by a covered loss.

\* \* \*

**B.  Coverage B – Other Structures**
    1. We cover:
        a.   Other structures on the "residence premises" set apart from the dwelling by a clear space;
        b.   Other structures connected to the dwelling by only a fence, utility line, or similar connection; and
        c.   Fences.

\* \* \*

(HO 03 05 11):

**C.  Coverage C – Personal Property**
    1.   Covered Property
     We cover personal property owned or used by an "insured" while it is anywhere in the world.  After a loss and at your request, we will cover personal property owned by: . . .

\* \* \*

(UPC 01 42 12 14):

**D.  Coverage D – Loss of Use**
    1.   Additional Living Expense

Certified Document Number: 88025193 - Page 6 of 22

If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning:

a.   Any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to:

a.   Repair or replace the damage; or

b.   If you permanently relocate, the shortest time required for your household to settle elsewhere.

In either event, the payment(s) will be limited to (12) consecutive months from the date of the covered loss.

\* \* \*

(HO 00 03 05 11):

### E.  Additional Coverages

#### 1.  Debris Removal

**a.**     We will pay your reasonable expense for the removal of:

**(1)**     Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

**(2)**     Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property.  If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

\* \* \*

#### 8.  Collapse

**a.**     The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

**b.**     For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.**     This Additional Coverage – Collapse does not apply to:

**(1)**     A building or any part of a building that is in danger of falling down or caving in;

**(2)**     A part of a building that is standing, even if it has separated from another part of the building; or

**(3)**     A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**d.**     We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

     **(1)**     The Perils Insured Against named under Coverage C;

     **(2)**     Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

     * * *

     **(5)**     Weight of ran which collects on a roof; or

  **e.**     Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

     * * *

## SECTION I – PERILS INSURED AGAINST
## A.  Coverage A – Dwelling and Coverage B – Other Structures

  1.  We insure against direct physical loss to property described in Coverages A. and B.

  2.  We do not insure, however, for loss:

    a.  Excluded under Section I – Exclusions;

    b.  Involving collapse, including any of the following conditions of property or any part of the property:

      (1) an abrupt falling down or caving in;

      (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

      (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above;

      Except as provided in **E.8.** Collapse under Section I – Property Coverages; or

    c.  Caused by:

          * * *

      (2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

        (a)  fence, pavement, patio or swimming pool;

        (b)  footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

        (c)  retaining wall or bulkhead that does not support all or part of a building or other structure; or

          * * *

      (6) Any of the following:

Certified Document Number: 88025193 - Page 8 of 22

(HO 04 67 05 11):

    (a)   Wear and tear and marring;

(HO 00 03 05 11):

    (b)   Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

            * * *

(HO 04 67 05 11):

    (f)   Settling, shrinking, bulging, or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, or foundations;

            * * *

(HO 00 03 05 11):

**Exception to c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam within a:

(i)    Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii)   Plumbing, heating, air condition or automatic fire protective sprinkler system or household appliance on the "residence premises".  This includes the cost to tear out and replace any part of a building, or other structure on the "residence premises" but only when necessary to repair the system or appliance.  However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

            * * *

Under 2.b. and c. above, any ensuing loss to property described in Coverage A and B not precluded by any other provision in this policy is covered.

            * * *

**B.  Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

\* \* \*

2.  Windstorm or Hail
This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.
This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

\* \* \*

10.  Dropped or Falling Objects
This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damage d by a covered event which directly causes the object to drop or fall.  Damage to the dropped or falling object itself is not included.

\* \* \*

(HO 04 67 05 11):

12.  Accidental Discharge or Overflow of Water or Steam
a.      This perils means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
b.      Except as specifically provided by this endorsement, this peril does not include loss:

\* \* \*

(4) Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

\* \* \*

d.      Section I – Exclusions A.3. Water, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

(HO 00 03 05 11):

**SECTION I – EXCLUSIONS**
**A.**  We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

* * *

### 3. Water

This means:

a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind including storm surge;

b. Water which:
   (1) Backs up through sewers or drains; or
   (2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;

c. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

d. Waterborne material carried or otherwise moved by any of the water referred to in A.3.a through A.3.c of this exclusion.

This Exclusion A.3. applies regardless of whether any of the above, in A.3.a. through A.3.d is caused by an act of nature or is otherwise caused.

This Exclusion A.3. applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

* * *

### 5. Neglect

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at an after the time of a loss.

* * *

(UPC 01 42 12 14):

### 10. "Fungi" or Microbes

a. "Fungi" or microbes means the presence, growth, proliferation, spread of any activity of "fungi" or microbes.

This exclusion also applies to the cost:

(1) To remove "fungi" or microbes from property covered under Section I – Property Coverages;

(2) To tear out and replace any part of the building or other covered property as needed to gain access to the "fungi" or microbes; and

(3) Of testing of air or property to confirm the absence, presence or level of "fungi" or microbes.

c. Exclusion 10.a. applies unless the "fungi" or microbes are located upon the portion of covered property which must be repaired or replaced because of direct physical damage resulting from sudden and accidental discharge or overflow of water which would otherwise be covered under the policy. . . . .

d. However, the exception to the exclusion described in 10.b. does not include:

Certified Document Number: 88025193 - Page 11 of 22

(1) The cost to treat, contain, remove or dispose of the "fungi" or microbes beyond that which is required to repair or replace t he covered property physically damaged by water;

(2) The cost of any testing of air or property to confirm the absence, presence or level of "fungi" or microbes whether performed prior to during or after removal repair, restoration or replacement;

(3) The cost of any decontamination of the "residence premises"; and

(4) Any increase in loss under Coverage D – Loss of Use and Additional Coverage 1. Debris Removal resulting from c. (1), (2) and (3).

* * *

**12. Existing Damage**

a. Damages which occurred prior to the policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or

b. Claims or damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to the policy inception.

**13. Diminished Value**

We do not cover any loss due to diminished value of any property covered under this policy.

* * *

(HO 00 03 05 11):

**B.** We do not insure for loss to property described in Coverages A. and B. caused by any of the following.  However, any ensuing loss to property described in Coverages A. and B. not precluded by any other provision of this policy is covered.

1. Weather conditions.  However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

* * *

3. Faulty, inadequate or defective:

* * *

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises."

**SECTION I – CONDITIONS**

* * *

C.    Duties After Loss

(UPC 01 42 12 14):

1.    Your Duties After Loss

In cases of a loss to covered property, you must comply with all of the following duties. We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by our or an "insured" seeking coverage.

a. Give prompt notice to us or our agent. With respect to loss caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code, any claim must be filed with us not later than one year after the date of the loss that is the subject of the claim. However, any such claim may be filed after the first anniversary of the date of the loss for good cause shown by the person filing the claim.

b. Adjust all losses directly with us;

c. Notify the police in case of a loss by theft;

d. Notify the credit card or electronic fund transfer card or access device company in case of loss . . .

e. Protect the property from further damage. If repairs to the property are required, you must:

   (1) Provide us with an opportunity to inspect the property in its damaged condition and prior to repairs;

   (2) Provide us with an opportunity to exercise our option to repair;

   (3) Provide us with specifications of damage and detailed repair estimates prior to making repairs;

   (4) Make reasonable and necessary repairs to protect the property; and

   (5) Keep an accurate record of repair expenses;

f. Cooperate with us in the investigation of a claim;

g. Prepare an inventory of damaged personal property . . .

h. As often as we reasonably require:

   (1) Show the damaged property;

   (2) Provide us with records and documents we request and permit us to make copies;

   (3) All insured must submit to examination under oath, while not in the presence of another "insured", and sign the same;

i. Send to us, within 91 days after our request, your signed, sworn proof of loss on a standard form supplied by us. We must request a signed, sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

   (1) This proof of loss shall set forth, to the best of your knowledge and belief:

                        * * *

j. In the County where the "residence premises" is located; "you", "your" agents, "your" representatives and all "insureds" must submit to examination under oath and sign the same when asked

to do so by "us".  At "your" or "our" request, the examinations will be conducted and not in the presence of any other persons except legal representation.

    k.  Permit "us" to take samples of damaged property for inspection, testing and analysis; and

    l.  Any and all "insureds" must execute all authorizations for the release of information when asked to do so by "us."

* * *

(HO 00 03 05 11):

    D.  **Loss Settlement**

In this Condition D., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E. 11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

(UPC 01 42 12 14):

    1.  Property of the following types:

        a.  Personal property other than jewelry;

        b.  Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

        c.  Structures that are not buildings; and

        d.  Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

(HO 00 03 05 11):

    2.  Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

        a.  If, at the time of the loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace without deduction for depreciation, but not more than the lease of the following amounts:

           (1) The limit of liability under this policy that applies to the building;

           (2) The replacement cost of  that part of the building damaged with material of like kind and quality and for like use; or

           (3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That portion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

\* \* \*

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.  Once actual repair or replacement is complete, we will settle the loss as noted in 2.a and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance on this policy on the building; and

(2) Less than $2,500:

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

\* \* \*

F.  Appraisal

If you and we fail to agree on the amount of loss either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 30 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraiser will separate set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss.

Each party will:

1.  Pay its own appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

(UPC 01 42 12 14):

No suit involving the amount of loss or damage under Section I of the policy can be brought unless an appraisal has been completed.

\* \* \*

H.  Legal Action Against Us

1.  Except as provided in Paragraph 2, no suit or action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy.  Action must be brought against us within two years and one day from the

date the cause of action first accrues.  A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

2.  With respect to suits brought in connection with claims for loss caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code:

No action can be brought against us unless there has been compliance with all of the terms of this policy.  The action must be brought before the earlier of the following:

a.  Two years and one day from the date we accept or reject the claim; or

b.  Three years and one day from the date of the loss that is the subject of the claim.

As stated in Section I – Conditions, Item F. Appraisal, no suit involving the amount of loss or damage under Section I of the policy can be brought unless an appraisal has been completed.

\* \* \*

Catastrophe Claims

If a claim results from a weather-related catastrophe or a major natural disaster, each claim-handling deadline shown in C. Duties After Loss and J. Loss Payment is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather-related event which:

1.  is declared a disaster under the Texas Disaster Act of 1975; or

2.  is determined to be a catastrophe by the Texas Department of Insurance.

(HO 00 03 05 11):

### SECTIONS I AND II – CONDITIONS

\* \* \*

B.  Waiver or Change of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid.  Our request for an appraisal or examination will not waive any of our rights.

(UPC 03 12 12 14):

### WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

Schedule

| Windstorm or Hail Deductible Percentage Amount: |
| --- |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Section I – Conditions

B.  Deductible

The following special deductible is added to the policy:

Certified Document Number: 88025193 - Page 16 of 22

With respect to the peril of Windstorm or Hail, for any one loss, we will pay only that part of the total of all loss payable that exceeds the windstorm or hail percentage deductible.

The dollar amount of the windstorm or hail deductible is determined by multiplying the Coverage A Limit of Liability shown in the Declarations by the deductible percentage amount shown in the Schedule above [or as shown in the Declarations].

* * *

No other deductible in the policy applies to loss caused by windstorm or hail.

All other provisions of this policy apply.

(UPC 01 42 12 14):

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

UPC reserves the right to assert other Policy provisions or defenses as discovery in this case advances.

### Third Defense – *Bona Fide* Controversy/Liability Not Reasonably Clear

As to Plaintiffs' extra-contractual claims, a *bona fide* controversy existed and continues to exist concerning Plaintiffs' entitlement, if any, to insurance benefits from UPC, and UPC has the right to dispute coverage based upon the policies and the law and precedent, and view coverage differently from those asserting claims under the policies without facing bad faith liability.  UPC will show that a *bona fide* controversy existed and continues to exist regarding any alleged covered loss.

### Fourth Defense – Damage Limitation

Plaintiffs' damages, if any, are limited by the amounts set forth in the limitation provision of the Policy.  Plaintiffs' contractual damages cannot exceed the applicable Policy limits.

### Fifth Defense – Reliance on Case Law

UPC reasonably relied on case law from the state and federal courts of Texas, which support UPC's interpretation of the policies as they relate to Plaintiffs' claims.

**Sixth Defense – Absence of Covered Causes for Remaining Claims
Precludes Extra-Contractual Liability**

The existence of coverage for Plaintiffs' insurance claim is necessary to establish the basis for Plaintiffs' Insurance Code claims.  Because Plaintiffs' allegations are generally based on UPC's alleged failure to investigate the claim and pay policy benefits, the existence of any applicable exclusions, limitations, conditions, or the absence of coverage for any further benefits under the Policy, precludes Plaintiffs' Insurance Code claims and all other extra-contractual claims against UPC.

**Seventh Defense - Failure to Satisfy Conditions Precedent**

Plaintiffs did not plead with specificity the performance or occurrence of all conditions precedent.[7]  UPC demands strict proof that each and every condition precedent was performed or has occurred.[8]  To the extent the UPC Policy provides coverage to Plaintiffs, Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to comply with all conditions precedent to any right to recover under the UPC Policy.  Specifically, Plaintiffs have failed to prove that the alleged loss or claims are covered losses or claims under the UPC Policy, and Plaintiffs have failed to segregate that portion of any alleged loss that they claim is covered under the UPC Policy from that portion of the alleged loss that is not covered.

**Eighth Defense – Failure to Provide Statutorily-Compliant Pre-Suit Notice**

Plaintiffs failed to provide UPC with the required statutorily-compliant written notice 30 days before the date the lawsuit was filed as required by Tex. Civ. Prac. & Rem. Code §38.002.  Consequently, Plaintiffs are not entitled to attorneys' fees as pled under the Texas Civil Practices

---

[7] *See,* Tex. R. Civ. P. 54.
[8] *See, Grimm v. Grimm*, 864 S.W.2d 160, 162 (Tex. App. – Houston [14th Dist.] 1993, no writ).

Certified Document Number: 88025193 - Page 18 of 22

and Remedies Code.  Because Plaintiffs failed to provide the statutorily-compliant pre-litigation notice, Plaintiffs are precluded from recovering attorneys' fees and expenses in this matter.

Plaintiffs also failed to provide UPC with statutorily-compliant written notice 60 days before the date the lawsuit was filed as required by Tex. Insur. Code §541.154 and Tex. Insur. Code §542A.003.  Consequently, Plaintiffs are not entitled to attorneys' fees as pled under the Texas Insurance Code.  Because Plaintiffs failed to provide the statutorily-compliant pre-litigation notice and demands, Plaintiffs are precluded from recovering attorneys' fees and expenses in this matter.

**Ninth Defense – Due Process**

To the extent Plaintiffs pray for punitive or exemplary damages, UPC invokes its rights under the Due Process Clause of the Fifth Amendment of the United States Constitution as applied to the States through the Fourteenth Amendment of the United States Constitution.  UPC affirmatively pleads that Plaintiffs' claim for punitive or exemplary damages violates the Due Process Clauses of the Fifth and Fourteenth Amendments inasmuch as:

1. Punitive or exemplary damages can be assessed in an amount left to the discretion of the judge and jury;

2. A jury award of punitive or exemplary damages need only be based on the vote of ten jurors and does not require a unanimous verdict.

3. To obtain an award of punitive or exemplary damages, Plaintiffs need only prove their claims by a preponderance of the evidence standard and not beyond a reasonable doubt as should be required when punishment awards are assessed;

4. UPC and its officers, all of whom are subject to any award of punitive or exemplary damages, do not have the right to refuse to testify against themselves, but must in fact take the stand or give deposition testimony or subject the company to the consequences of a default judgment;

5. The assessment of punitive or exemplary damages is not based on a clearly defined statutory enactment setting forth a specific intentionality requirement or the specific prerequisites of such a finding and, in effect, such damages can be awarded even though there are no special standards, limits or other statutory requirements to define the means,

scope and limit of such awards, rendering such awards unduly vague and unsupportable under the requirements of due process; and

6. In essence, UPC is subject to all the hazards and risks of what amounts to a fine, and, in fact, such awards often exceed normal criminal fines, but UPC receives none of the basic rights accorded to criminal defendants when they are subjected to possible criminal penalties.

### Tenth Defense – Equal Protection

To the extent Plaintiffs pray for punitive or exemplary damages, such request should be denied because it violates UPC's equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States, the provisions of the Eighth Amendment to the Constitution of the United States, and the Constitution of the State of Texas, Article I, Sections 13 and 19.

### Eleventh Defense – Punitive Damage Limitation

Any award of punitive or exemplary damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) two times the amount of economic damages plus $200,000, pursuant to the statutory mandates of the Texas Civil Practices & Remedies Code §§41.002-41.009.

### Twelfth Defense – Offset or Credit

UPC is entitled to any set-offs or credits for prior payments by UPC or other third-parties.

### Thirteenth Defense – Acts or Omissions of Others

The damages allegedly sustained by Plaintiff may have been the result of actions or omission of individuals over whom UPC had not control, including but not limited to Plaintiffs, therefore, UPC is not liable to Plaintiffs.

**Fourteenth Defense – Failure to Mitigate**

To the extent Plaintiffs' alleged damages are determined to be the result of a failure by Plaintiffs to take reasonable steps to mitigate the loss, those damages are not recoverable.

**Fifteenth Defense – Reservation of Right of Appraisal**

To the extent Plaintiffs present evidence inconsistent with UPC's investigation and conclusions regarding the amount of loss or cost of repair under the Policy, and the parties are unable to reach an agreement to resolve this matter, UPC reserves the right and does not waive its right under the Policy to invoke appraisal. The Policy contains an appraisal clause allowing either party to the insurance contract to invoke the appraisal process in the event that there is a disagreement concerning the amount of loss for a covered loss under the Policy. The Policy requires the parties complete appraisal before any suit on the Policy or claim may proceed.

## IV.
## REQUEST FOR DISCLOSURE

Pursuant to Tex. R. Civ. P. 194, Plaintiffs are requested to disclose the information or material described in Rule 194 within thirty (30) hereof service.

WHEREFORE, United Property & Casualty Insurance Company prays that on final trial and hearing, Plaintiffs take nothing and that United Property & Casualty Insurance Company recover its costs, fees and expenses, and for such other and further relief, at law or in equity, general or special, to which it may show itself justly entitled.

Respectfully Submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

/s/ Sarah R. Smith
Sarah R. Smith
Texas Bar No. 24056346
sarah.smith@lewisbrisbois.com
Suzanne A. Schlicher
Texas Bar No. 02601800
suzanne.schlicher@lewisbrisbois.com
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767  Telephone
(713) 759-6830   Facsimile

**ATTORNEYS FOR UNITED PROPERTY &
CASUALTY INSURANCE COMPANY**

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a true and correct copy of the above pleading has been forwarded pursuant to the Texas Rules of Civil Procedure on this 11th day of November, 2019.

| | |
|---|---|
| *Via E-Serve* | *Via E-Serve* |
| Andrew C. Cook | Sean H. McCarthy |
| The Cook Law Firm, PLLC | Williams Hart Boundas Easterby, LLP |
| 7324 Southwest Freeway, Suite 585 | 8441 Gulf Freeway, Suite 600 |
| Houston, Texas 77074 | Houston, Texas 77017 |
| acc@texinsurancelaw.com | smccarthy@whlaw.com |

*Attorneys for Plaintiff*

*Attorneys for Plaintiff*

/s/ Sarah R. Smith
Sarah R. Smith



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 13, 2019

Certified Document Number:      88025193 Total Pages:  22

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



# CHRIS DANIEL
### HARRIS COUNTY DISTRICT CLERK

## Civil Process Pick-Up Form

### CAUSE NUMBER: __2019-74126

ATY___X_____                    CIV __ _____          COURT 165th

| REQUESTING ATTORNEY/FIRM NOTIFICATION |
|---|
| **\*ATTORNEY: COOK,  ANDREW COBB    \* PH: 713-401-2890** |
| **\*CIVIL PROCESS SERVER:** |
| **\*PH:** |
| **\*PERSON NOTIFIED SVC READY:**<br>**\* NOTIFIED BY:  MARCELLA SINGLETON** |
| **\*DATE: 10-09-2019** |

Type of Service Document:Citation          Tracking Number 73683437
Type of Service Document:                  Tracking Number
Type of Service Document:_____         Tracking Number_____
Type of Service Document:_____         Tracking Number_____
Type of Service Document:_____         Tracking Number_____
Type of Service Document:_____         Tracking Number_____
Type of Service Document:_____         Tracking Number_____

**Process papers prepared by: Marcella Singleton**

**Date:  10-09-2019          30 days waiting   11-09-2019**

| | |
|---|---|
| **\*Process papers released to:** | _Andrew Cook_____ |
| | **(PRINT NAME)** |
| **\*(CONTACT NUMBER)**_____ | **(SIGNATURE)** |
| **\*Process papers released by:** | _Andrew Cook_____ |
| | **(PRINT NAME)** |
| | **(SIGNATURE)** |
| **\* Date:  10/6/19**    ,2015  Time:  3:14    AM  (PM) | |

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**Entire document  must be completed    (do not change this document)**  Revised 1/9/2015

Certified Document Number: 87536315 - Page 1 of 1



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 13, 2019

Certified Document Number:        87536315 Total Pages:  1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

10/16/2019 1:21 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37702800
By: Mercedes Ramey
Court Filed: 10/16/2019 1:21 PM

# RETURN OF SERVICE

Notice: This document contains sensitive data

| Court | |
|---|---|
| **District Court**<br>**165th Judicial District**<br>**Harris County, Texas** | |

| Plaintiff | Cause # |
|---|---|
| **DAVE AND ANGELA SMOTHERMON** | **201974126** |

| Defendant(s) | Came to Hand Date/Time |
|---|---|
| **UNITED PROPERTY & CASUALTY INSURANCE COMPANY AND JAMAL HOLMES** | **10/15/2019      9:11 PM** |

| Manner of Service | Service Date/Time |
|---|---|
| **Personal** | **10/16/2019      9:12 AM** |

| Documents | Service Fee: |
|---|---|
| **CITATION; PLAINTIFF'S ORIGINAL PETITION** | **$77.50** |

I am certified under order of the Judicial Branch Certification Commission to serve process, including citations in Texas. I am not a party to or interested in the outcome of this lawsuit. My information: identification number, birth date, address, and certification expiration date appear below. I received and delivered the Specified Documents to Defendant as stated herein.

On **10/16/2019** at **9:12 AM**: I served **CITATION and PLAINTIFF'S ORIGINAL PETITION** upon **UNITED PROPERTY & CASUALTY INSURANCE COMPANY c/o CT CORPORATION SYSTEM, REGISTERED AGENT** by delivering **1** true and correct copy(ies) thereof, with **UNITED PROPERTY & CASUALTY INSURANCE COMPANY c/o CT CORPORATION SYSTEM, REGISTERED AGENT, Who accepted service, with identity confirmed by subject stating their name, KIM HIGHTOWER a black-haired black female approx. 45-55 years of age, 5'8"-5'10" tall and weighing 140-160 lbs** at **1999 BRYAN ST STE 900, DALLAS, TX 75201**.

My name is: **John David Whitehead**. My date of birth is: **11/10/1966**

My address is: **2293 Hawes Ave #2177, Dallas, TX 75235**, USA.

My process server identification # is: **PSC-12227**. My Certification expires: **8/31/2021**.

I declare under penalty of perjury that the foregoing, **RETURN OF SERVICE**, is true and correct.

Executed in _DALLAS_ county, TX.

John David Whitehead

10/16/2019
Date Executed

Certified Document Number: 87642572 - Page 1 of 1

Ref  Smothermon v. UPC & Jamal Holmes

0044035730


Cook Law Firm

Tracking # 0044146894





I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 13, 2019

Certified Document Number:        87642572 Total Pages:  1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

https://www.hcdistrictclerk.com/edocs/public/CaseDetails.aspx?Get=x+83p8+9SJUmv9jZ7Y0AbF+DqZm/eZaCy43z1xiLc0/A1n3Sv,rO7UyCQ751U8r5Djbo/5J60HJGvLIh9Uoj0yYGJ5eEB4I8e5Xmsf,I9U=

## 201974126 - SMOTHERMON, ANGELA vs. UNITED PROPERTY & CASUALTY INSURANCE COMPANY (Court 165)

Chronological History *(non-financial)*   Print All

| Summary | Appeals | Cost Statements | Transfers | Post Trial Writs | Abstracts | Parties |
| Court Costs | Judgments/Events | Settings | Services/Notices | Court Registry | Child Support | Images |

**\* Note: Only non-confidential public civil/criminal documents are available to the Public. All non-confidential Civil documents are imaged. In Criminal Cases, select non-confidential documents are available in electronic format (not every document is available for electronic viewing and a document may be filed in the case that is not viewable electronically). If the case or Civil document you are looking for is not available and should be, please click here to notify Customer Service.**

Purchase Order ( 0 documents )

Print List

| Image No. | Type | Title | (Reset Sort) | Post Judgm | Date | Pages | Add Entire Case |
|---|---|---|---|---|---|---|---|
| 88025193 | Filing | Special Exceptions, First Amended Answer, Affirmative Defenses and Requests for Disclosures of Defendant, United Property & Casualty Insurance Company | | | 11/11/2019 | 22 | Add to Basket |
| 88010783 | Filing | Special Exceptions, Original Answer, Affirmative Defenses and Requests for Disclosures of Defenant, United Property & Casualty Insurance Company | | | 11/08/2019 | 22 | Add to Basket |
| 87642572 | Filing | Return of Service | | | 10/16/2019 | 1 | Add to Basket |
| 87536315 | Filing | Civil Process Pick-Up Form | | | 10/09/2019 | 1 | Add to Basket |
| 87519159 | Filing | Plaintiffs Original Petition | | | 10/08/2019 | 45 | Add to Basket |
| -> 87519161 | Filing | Civil Case Info Sheet | | | 10/08/2019 | 1 | Add to Basket |

37]